STIEWEL v. LALLY.

## Opinion delivered February 1, 1909.

1. REAL ESTATE BROKERS—RIGHT TO COMMISSION.—A real estate broker is entitled to his commissions where he was the procuring cause of the sale of the land to another. (Page 203.)

2. CONTRACT—STIPULATION AS TO TIME OF PERFORMANCE—WAIVER.—A party to a contract containing a limitation as to the time for performance who induces the other party after expiration of the limit to continue in the performance of the contract will not be permitted to withhold the fruits of the contract because it was not performed within the specified time. (Page 203.)

3. REAL ESTATE BROKERS—ACTION FOR COMMISSION—EVIDENCE.—Where plaintiffs sued upon a written contract for a broker's commission, and defendant admitted that the contract was executed, but alleged that it was not in force at the time of sale, it was competent for the plaintiffs under the issues to prove that a time limit in the contract was waived by defendant. (Page 204.)

4. SAME—LETTERS AS EVIDENCE.—Where, in a suit to recover a broker's commission, the defense was that the contract was not in force at the time the sale was made by reason of expiration of the time limit therein, letters which passed between plaintiffs and certain prospective purchasers after expiration of the time limit, and which were at the time shown to defendant, were properly admitted to show that plaintiffs, with defendant's knowledge, continued their efforts to sell the property after the time limit had expired. (Page 205.)

5. SAME—RIGHT TO COMMISSION.—Where a real estate broker brought about a sale for his principal, without notice on his part of any revocation of his authority to sell, he is entitled to his commission, even though the principal did not know that he had procured the sale. (Page 205.)

6. SAME—WHEN COMMISSION EARNED.—It was not error to refuse to instruct the jury that real estate brokers could not recover their commission for effecting a sale if they did not agree on the terms of sale with a purchaser, even though they may have procured a sale. (Page 206.)

7. SAME—RIGHT TO COMMISSION ON CHANGE OF TERMS.—It was not error to refuse to instruct that a real estate broker, after procuring a purchaser who was accepted, was not entitled to recover his commission if his principal sold the property on other terms than those on which the broker was authorized to sell, unless the principal sold upon different terms in bad faith for the purpose of depriving the broker of his commission; as the broker will not be deprived of his commission because the principal voluntarily changed the terms of the contract. (Page 207.)

8.  SAME—EFFECT OF FAILURE TO PAY LICENSE.—Failure of a real estate
    broker to pay a license fee required by a city ordinance will not pre-
    vent him from recovering a commission earned by him for effecting a
    sale of land where the ordinance does not impose a penalty upon nor
    prohibit engaging in the business without license nor invalidate a con-
    tract made by an unlicensed person.  (Page 209.)

9.  APPEAL AND ERROR—HARMLESS ERROR.—Appellant cannot complain be-
    cause appellees recovered less than they were entitled to under the
    instruction of the court.  (Page 209.)

Appeal from Pulaski Cricuit court, Second Division; *Ed-
ward W. Winfield,* Judge; affirmed.

*Moore, Smith & Moore* and *Morris M. Cohn,* for appellant.

1.  The two writings were complementary to each other,
and are unambiguous. They limit the authority to sell to thirty
days and prescribe the terms of sale. There was no evidence
to support a verdict for a commission of 2½ per cent., or what
was a reasonable compensation.

2.  The case should have been taken from the jury. To enti-
tle a real estate agent to commissions, there must be a contract of
employment.  18 Col. 496; 33 Pac. 163; 79 Tex. 454; 15 S.
W. 483; 36 *Id.* 805; 54 Minn. 341; 56 N. W. 40; 29 S. W.
438; 45 Pac. 524; 96 Ky. 576; 29 S. W. 438. He must recover
only in accordance with such contract.  Mechem on Agency, §
966; 45 Pac. 676; 80 Ark. 254; 81 *Id.* 96; 83 *Id.* 202. Where
the contract is relied on, no recovery can be had on *quantum mer-
uit,* nor where the contract is unperformed; if performed, recovery
can only be had thereon. 3 Ark. 324; 4 *Id.* 577; 38 *Id.* 102; 74 *Id.*
24; 81 *Id.* 96; 5 *Id.* 651-7-8; 2 Wall. 1-7. The written contract
cannot be varied by parol.  Arkansas cases *supra;* Mechem on
Agency, § 966; 53 Wisc. 41. See also 204 U. S. 228; 83 N.
Y. 378; 55 Ark. 574-6.

3.  Appellees had no license as brokers, and their contract
was not enforceable.  33 Ark. 436; 77 *Id.* 580; 1 Martin, Ch.
Dec. 134, 1153; 145 U. S. 421; Greenhood, Public Policy, 580
*et seq.;* 32 S. E. 408, 413; 54 S. C. 266; 50 Ga. 530; 15 S.
W. 862; 57 Miss. 51; 57 *Id.* 531; 63 *Id.* 244; 70 *Id.* 113.

4.  It was error to refuse instructions 8, 10 and 12, asked
by defendant. It was the duty of the court to interpret the
contracts and declare the effect.  81 Ark. 96; 55 *Id.* 576; 80

*Id.* 254; 204 U. S. 239 and cases *supra.* Also 9 Ark. 501-506; 24 *Id.* 212; 38 *Id.* 102.

5. It was error to modify instruction 6. A party is not even bound to third persons as to matters of which he had no knowledge, done by third persons for his ostensible benefit. 76 Ark. 563; 64 *Id.* 217. Such services are gratuitous if unknown to the party to be bound. 20 Johns. 28; 2 H. & N. 564; 1 T. R. 20; 120 U. S. 227; Mechem on Agency, § 600. Also in modifying the 9th instruction asked by defendant. Mechem, Agency, § § 968; 61 Md. 343; 83 N. Y. 378-381; 204 U. S. 208-9.

6. Improper evidence was admitted. If suit is brought under one contract, evidence as to another is incompetent. 68 Ark. 225; 2 *Id.* 397; 46 *Id.* 87; 57 *Id.* 512; 57 *Id.* 595; 24 *Id.* 371; 11 *Id.* 134.

*Gray & Gracie, Robert Martin* and *Murphy, Coleman & Lewis,* for appellees.

1. There was a contract of employment, and appellees produced a buyer willing and able to buy. The limitation in the power of attorney does not govern the contract; it was never so understood by the parties. 81 Ark. 96; 83 *Id.* 202; 55 *Id.* 574. The cases cited by appellant are different from this case. The sale was made to parties procured by appellees, under terms which they submitted, and the fact that the sale was made on terms "wholly unknown to them" does not relieve him of paying the commission. 53 Ark. 49; 21 N. Y. Supp. 440; 71 Conn. 599.

2. Failure to take out real estate broker's license does not bar a recovery. The liquor cases are not applicable. It is only where the statute or law avoids the contract that the failure avoids the contract. 145 U. S. 421; 36 Iowa, 546; 57 Miss. 51; 34 S. W. 450.

3. There was no error, either in giving, refusing or modifying instructions. 55 S. E. 899; 147 Fed. 218; 97 S. W. 838; 101 *Id.* 1131; 53 Ark. 49; 71 Conn. 599.

4. There was no improper evidence admitted to appellant's prejudice. 1 Gr. Ev. (16 Ed.) p. 688-9, § 563 E.; 31 Ark. 364;

17 Ark. 203; 112 Ala. 59; 76 *Id.* 42; 116 *Id.* 68; 78 Fed. 460; 56 *Id.* 434; 7 *Id.* 477; 30 Ind. 438.

McCULLOCH, J. This is an action at law instituted by M. A. Lally and L. S. Cherry against Abe Stiewel to recover a sum alleged to be due as commission on sale of a coal mine and lands owned by the latter, situated in Johnson County, Arkansas.

In the first paragraph of the complaint the plaintiffs alleged that the defendant entered into a written contract with them, a copy of which contract is exhibited with the complaint, whereby the defendant employed them to sell said property for a sum not less than $350,000 and agreed to pay them as compensation for their said services all of the purchase price in excess of said sum; that they negotiated a sale of said property to one Daugherty for the sum of $450,000; that, by and through the efforts of plaintiffs, said purchaser, Daugherty, and the defendant were brought together, and defendant conveyed said property to him for the price of $437,000. They prayed judgment for $100,000 as compensation.

In the second paragraph of the complaint the plaintiffs alleged that they negotiated a sale of said property to Daugherty at the instance and request of defendant, that defendant accepted Daugherty as a purchaser and sold the property to him, that said sale was accomplished through the efforts of plaintiffs, and that their services in negotiating said sale were reasonably worth the sum of $100,000, which it is claimed they were entitled to recover, even if it should be found that they were not entitled to recover on the written contract set forth in the preceding paragraph.

The contract set forth in and exhibited with the first paragraph of the complaint reads as follows:

"It is agreed between Abe Stiewel, principal, and Martin A. Lally and L. S. Cherry, agents, that if the said agents shall make a sale of the lands and Eureka Coal Mines at Spadra, Johnson County, State of Arkansas, under a power of attorney executed by the said principal to said agents, bearing .even date herewith, authorizing them to sell· said property for the sum of four hundred and twenty-five thousand dollars ($425,000.00), the said principal will allow the said agents, as full compensation

for making said sale, all the purchase money received by him in excess of the sum of three hundred and fifty thousand dollars ($350,000.00), the said excess to constitute the sole and entire compensation to be asked or demanded by said agents of said principal.

"Witness our hand and seals this 26th day of March, 1903.
                              "Abe Stiewel,
                              "L. S. Cherry,
                              "Martin A. Lally.

The power of attorney referred to in the contract is not mentioned in nor exhibited with the complaint, but it was introduced in evidence at the trial. According to its terms, plaintiffs were appointed by defendant as his agents and attorneys to sell the property in question for the sum of $425,000, and it was provided that "said agency is to continue thirty (30) days from this date," the date of the instrument being March 26, 1903, the same date of the contract.

Defendant in his answer to the first paragraph of the complaint admitted that he executed the contract exhibited with the complaint, but denied that it was in force at the time of the alleged sale of the property; denied that he entered into any contract whereby the sale of said property was to be made by plaintiffs and compensation was to be paid to them whether the transfer was directly through them or whether the purchaser and defendant were brought together by plaintiffs; denied that plaintiffs negotiated the sale of the property to Daugherty for $450,000, or that Daugherty accepted an offer made to him by plaintiffs for the purchase of the property, or that defendant and Daugherty were brought together through the efforts of plaintiffs, or that defendant sold the property for the sum of $437,000.

For answer to the second paragraph of the complaint the defendant denied that plaintiff negotiated a sale of property to Daugherty, or that they brought him (defendant) and the purchasers together, or had any connection with the sale of the property which he subsequently made. He alleges that he sold the property in July, 1904, to Daugherty and one Albers, together with a large quantity of merchandise, for the sum

and price of $400,000, and that he realized on the sale of the mine and land only the sum of $367,000, and that neither of the plaintiffs had anything to do with the sale.

Defendant also pleaded, in bar of plaintiff's right to recover commission on the sale, an ordinance of the city of Little Rock, where plaintiffs and defendant resided, requiring all agents and brokers engaged in the sale of real estate to obtain a license from the city. He alleged that plaintiffs had never obtained a license as required by said ordinance, and that the alleged services were performed by plaintiffs, if at all, in the city of Little Rock.

He also pleaded as a further defense that prior to the institution of this action plaintiff Cherry and one Charles B. Hood had instituted an action against him in the court of common pleas of Hamilton County, Ohio, for the recovery of commission on the sale of this property, and that said action was still pending.

It is undisputed that the defendant sold and conveyed the property in July, 1904, to Daugherty and Albers for $400,000, this price including a stock of merchandise which was not embraced in the terms of plaintiff's alleged employment, and that, after deducting the price of the merchandise, the price received by defendant for the property which plaintiffs claim to have been employed to sell was $388,000.

A trial of the case before a jury resulted in a verdict in favor of the plaintiffs in the following form: "We, the jury, find for the plaintiff in the sum of 2½ per cent. commission based on the sum of three hundred and eighty-eight thousand dollars ($388,000) which amounts net to nine thousand seven hundred dollars ($9,700)."

Judgment was rendered in accordance with the verdict, and the defendant appealed.

Appellee Lally testified, in substance, that he acted as appellant's agent for the sale of the property in the year 1902, and continued to do so after the execution of the written contract mentioned in the complaint; that after this contract was entered into he negotiated with numerous parties for the sale of the property, among whom was Daugherty, with whom Al-

bers was associated; that he had considerable correspondence with Daugherty, beginning in July, 1903, and extending up to September 8, 1903, when the last letter was written to him by Daugherty, saying that he and his associate Albers could not purchase the property then, but would take up the proposition with him again after the first of the year (1904), and invited further correspondence; that he informed appellant from time to time of his continued effort to sell the property, and showed appellant his correspondence with Daugherty and others as the negotiations progressed; and that appellant made no objection to him continuing the negotiations after the expiration of the thirty-day limit in the contract, but on the contrary encouraged him to continue his efforts to sell the property, and gave him information concerning the output of the coal mine. He testified further that after the correspondence with Daugherty ended he continued his effort to sell to other parties up to April, 1904.

Appellee Cherry testified to various efforts that he made to sell the property, and, among other things, that he was notified by a business associate of his in Columbus, Ohio, that Albers and a Mr. Gilbert from Ohio would be at Spadra, Arkansas, on June 17, 1904, to look at this property; that he met those parties at Spadra and offered to show them through the property, but they told him they were familiar with it; that he talked with Albers about the price, etc., and that Albers told him that he (Albers) would not give more than $425,000 for it; that he informed appellant of this a few days later and stated to the latter that Albers would buy the property, and that appellant replied that he hoped he would do so. He testified that he continued his efforts up to July, 1904, when the property was sold, and that on July 1, 1904, he received a message from Gilbert asking that appellant meet him, and that he showed this message to appellant, who instructed him to wire Gilbert saying that he would meet him. He admitted having written a letter to appellant on June 13, 1905, claiming a commission of 2½ per cent. on the price of the property sold to Daugherty and Albers, and he explained this by saying he offered this by way of compromise.

S. M. Savage testified that appellant gave him authority during the spring of 1904 to sell the property and told him dur-

ing the summer of 1904 that he had also authorized Lally to sell it, and that Lally had sold it for $430,000 or $450,000.

Lally was recalled and testified that in June, 1903, he was trying to sell the property to one Nichols of New York, and received a letter from Nichols asking for an option for one week, and that at his request appellant wired Nichols giving the option.

Appellant testified, giving in detail the negotiations leading up to the sale to Daugherty and Albers. He said that appellees had nothing to do with the sale or the negotiation with the purchasers, but that the purchasers were introduced to him by other persons. He denied that he encouraged appellees to continue their efforts to sell the property after the expiration of the time limit in their contract, but that on the contrary he told Cherry to drop the matter and have nothing more to do with selling the property, and that Lally told him in September, 1903, that he had stopped his efforts to sell the property. He admitted having given specific extensions of the authority of appellees when they asked for it with reference to particular efforts to sell to certain persons.

He read in evidence the writing which he executed to appellees, and explained that it was given on the strength of a representation of appellees to the effect that they were about to close the sale. The writing is as follows:

"In case L. S. Cherry and M. A. Lally or their associates sell my 'Eureka Coal Mines' located at Spadra, Johnson County, Ark., and pay me or cause to be paid me the sum of $375,000 cash or its equivalent, I am to make a good and sufficient deed to whom they may direct for the above mentioned sum with a complete abstract of same. The property consists of 5,400 acres, more or less. I reserve the right to revoke same at will.

⠐ "Abe Stiewel.

"Little Rock, Ark., September 4, 1903."

"Little Rock, Ark., Sept. 4, 1903.

"This is to affirm that I have given L. S. Cherry and M. A. Lally of Little Rock, Arkansas, authority to negotiate a sale of my Eureka Mining property, located in Johnson County, Arkansas, embracing 5,400 acres, more or less, for the price of

$450,000 cash. This sum does not include the stock of merchandise now in store building, located on said property. No time option is contained in said authority to sell, for I reserve the right to revoke same at will.

"Abe Stiewel.

"We hereby assign here written' to Jno. Edward Haynes, our associate, for purposes as stated by Mr. A. Stiewel.

"M. A. Lally,<br>"L. S. Cherry.

"Sept. 4, 1903."

Albers testified in the case, and his testimony tends to establish appellant's contention that appellees had nothing to do with bringing about the sale.

It is earnestly insisted by learned counsel for appellant that the verdict is not sustained by the evidence, but after careful consideration we are of the opinion that the evidence is sufficient to establish the fact that the efforts of appellees operated as the procuring cause of the sale to Daugherty and Albers, that appellant authorized them to sell the property, and that they are entitled to recover a commission on the sale as compensation for their services. *Scott* v. *Patterson*, 53 Ark. 49; *Hunt* v. *Marshall*, 76 Ark. 375; *Branch* v. *Moore*, 84 Ark. 462; *Hoadley* v. *Savings Bank of Danbury*, 71 Conn. 590, 44 L. R. A. 321 and note.

The evidence shows that throughout the summer of 1903, after the expiration of the time limit in the contract, appellees were· in frequent correspondence with Daugherty concerning the sale of the property to him and his associate, Albers, and that when this correspondence ceased in September it was with a distinct intimation from Daugherty that the negotiations were to be resumed after the beginning of the succeeding year. It shows, or at least the jury were warranted in finding, that negotiations looking to the purchase of the property by Daugherty and Albers were resumed by their agent Gilbert, and that this was done through Cherry shortly before the sale was consummated. Appellant knew, according to the testimony of both of the appellees, that these negotiations were going on, and he offered no objection, but on the contrary encouraged appel-

lees by his conduct to proceed with the negotiation and expend their time and energies in procuring a purchaser. If this was true, he waived the time limit in the contract, and the second instruction, given to the jury at the instance of appellees, of which appellant complains, correctly stated a familiar principle of the law that a party to a contract containing a limitation as to time for performance, who induces the other party after the expiration of the limit to continue in the performance of the contract will not be permitted to withold the fruits of the contract because it was not performed within the specified time. *Cassady* v. *Clarke*, 7 Ark. 123; *Little Rock Granite Co.* v. *Shall*, 59 Ark. 405; *Tidwell* v. *Southern Engine & Boiler Works*, 87 Ark. 52; *Eyster* v. *Parrott*, 83 Ill. 517; *Andrews* v. *Tucker*, 127 Ala. 602; *German Savings Inst.* v. *Machine Co.*, 70 Fed. 146; *Orem* v. *Keelty*, 85 Md. 337; 3 Page on Contracts, § 1502.

But it is contended by appellant that the waiver of the time limit constituted, in effect, the making of a new contract, and that this was not pleaded in the complaint. This contention cannot be sustained, for the reason, among others, that appellant is not in position to take advantage of the omission to plead the waiver. The contract declared upon and exhibited with the complaint does not contain a time limit for the performance, but it refers to the power of attorney executed by appellant to appellees which does contain such a limitation. Now, if it be conceded that the two instruments of writing both constituted a single contract between the parties concerning the transaction under investigation, appellees declared upon the first paper only as constituting the contract, and appellant did not in any manner challenge the sufficiency of the pleading, but contented himself with an admission that such a contract was executed and an allegation that said contract was not in force at the time of the sale of the property. This made an issue as to whether or not the contract was in force at the time of the sale, and appellant ought not to be allowed now after trial and verdict to say that the question is not in issue under the pleadings. Under the issue as presented by appellant's answer, it was competent for appellees to prove facts which were sufficient in law to establish a waiver of the time limit in the contract, and thus

to show that the contract was in force at the time of the sale. Appellees both testified to facts which, if true, constituted a waiver, and this testimony was admitted without objection on the part of appellant. It is true, appellant objected to the introduction of copies of letters which passed between appellees and Daugherty and other persons with whom they were negotiating, and the court overruled the objection, but no objection was made to the repeated narrative by both appellees as to their persistent efforts to negotiate a sale of the property after expiration of the time limit in the contract and appellant's knowledge and encouragement in such efforts. The letters themselves were competent evidence, not of the truth of the statements therein, but to show that they related to negotiations being made for the sale of the property and to show information to appellant that appellees were still pursuing their efforts to negotiate a sale.

Appellee requested the court to give the following instruction, which was given by the court after striking out the words in italics:

"VI. A revocation of the authority of an agent may be made either expressly or by transaction in relation to the subject of the agency which is inconsistent with the continuance of the agent's authority. And if the jury find in this case that the defendant, Abe Stiewel, at any time after the execution of the instruments bearing date September 4, 1903, himself sold the coal lands to Daugherty and Albers, they will find for the defendant, unless they further find from the evidence that the plaintiffs negotiated said sale without notice of the revocation of their authority by Stiewel, and that *Stiewel had knowledge that* plaintiffs had brought said sale about." Exceptions saved to the modification of this instruction.

We think the court's action was correct in striking out the words.

If appellees procured a sale to be made by appellant without notice on their part of any revocation of their authority to sell, it is unimportant whether or not appellant knew that they had brought about the sale. Their right to recover commission did not depend upon knowledge on the part of appellant that they had brought about the sale. If he failed to give them notice

of revocation of their authority to sell, and they brought about a sale made directly by him, they were nevertheless the procuring cause of the sale, and were entitled to commission, even though he did not know that they had brought it about. This case does not fall within the rule that a party is not bound by the acts of third persons done for his benefit but without his knowledge. *Johnson* v. *Wynne,* 76 Ark. 563.

When appellant accepted the fruits of appellees' services without giving them notice of revocation of their authority, he bound himself to pay the stipulated commission.

Appellant requested the court to give the following instruction, which the court gave after adding the words in italics

"If the jury find that the plaintiff entered into negotiations with the persons who purchased said property from Stiewel, but that no agreement as to the terms of the sale of the property was reached between them and such purchaser, they are instructed that plaintiffs are not entitled to compensation because Stiewel subsequently sold the property to said parties through his own efforts, and *after plaintiffs had abandoned such negotiations, or the party with whom he was negotiating had declined to purchase through such negotiations,* and upon substantially the same terms as he had authorized them to effect a sale."

The instruction was erroneous, and was properly refused in the form in which it was originally requested, because it told the jury in effect that the plaintiffs could not recover commission if they did not agree on terms of sale with a purchaser, even though they may have procured the sale. The added words were somewhat loosely injected into the instruction, and illy expressed the views intended by the court, but they were in substance correct statements of the law, and were essential in order to make the instruction correct as a whole. We find no prejudicial error in the modification.

Appellant requested the court to give instruction numbered eight which, after reciting all the terms of the written agreements between the parties, reads as follows:

"Unless the jury find from the evidence that the plaintiff procured a purchaser, and that the provision of the contract with regard to a deposit and agreement in connection therewith,

as herein recited, were complied with by plaintiffs, within the period of thirty days from the date of the instrument, or any extension of said period of thirty days from the date of the instrument, or any extension of said period that may have been agreed to by Stiewel, they are instructed that the defendant is not liable to them for commissions or compensation on account of any sales subsequently made by him of the property, even if they should find that the purchasers were induced to enter upon negotiations through communications between them and plaintiffs."

This instruction was refused; also the following requested by appellant:

"X. Under the written instrument executed by Stiewel to the plaintiffs, authorizing them to sell his coal lands, they could only make a sale at the price named and for cash. They were not authorized to sell at a lower price or on credit. It was therefore their duty, before they could demand compensation, to effect a sale upon the terms named; and, if they failed to do so, plaintiffs cannot recover in this action, although the jury may believe that Stiewel subsequently sold the property to parties with whom they had negotiated.

"Or if the jury find that Stiewel sold the property to parties with whom plaintiffs had negotiated, but at a price or on terms different from that at which plaintiffs were authorized to make sale, plaintiffs cannot recover in this action unless the jury believe from the evidence that Stiewel in making said sale acted with notice that the plaintiffs were about to effect a sale at a different price and upon different terms in bad faith, for the purpose of depriving them of their compensation."

These instructions stated the law substantially to the same effect, that if appellant consummated a sale to a purchaser procured by appellees, but on other terms than those on which he had authorized them to sell, they would not be entitled to commission unless he sold to the purchasers on different terms in bad faith for the purpose of depriving them of their compensation. This is not a correct statement of the law on the subject.

There are authorities holding that, even where the owner, in order to make a sale to a purchaser brought by the agent, is

compelled to vary the original price or terms, the agent is entitled to commission on the sale. Rapalje on Real Estate Brokers, § 100; *Stinde* v. *Blesch*, 42 Mo. App. 578; *Schlegal* v. *Allerton*, 65 Conn. 260; *Adams* v. *Decker*, 34 Ill. App. 17; *Levy* v. *Coogan*, 16 Daly, 137; *Gilder* v. *Davis*, 137 N. Y. 504; *Wood* v. *Wells*, 103 Mich. 320.

But it is not necessary to go as far as that in declaring the law applicable to the present case, for the refused instructions now under discussion required the jury to find for appellant, even though he voluntarily altered the price or terms of sale, if it was not done in bad faith for the purpose of depriving appellees of commission.

The law on this particular subject, which is sufficient for this case, is correctly stated by Mr. Rapalje, § 100, as follows:

"Where the terms of sale are fixed by the vendor, in accordance with which the broker undertakes to produce a purchaser, yet if, upon the procurement of the broker, a purchaser comes, with whom the vendor negotiates, and thereupon voluntarily reduces the price of the property, or the quantity, or otherwise changes the terms of sale, as proposed to the broker, so that a sale is consummated, or terms or conditions are offered which the proposed buyer is ready and willing to accept, in either such case the broker will be entitled to his commission at the rate specified in his agreement with his principal." See also *Hoadley* v. *Savings Bank of Danbury*, 44 L. R. A. 350, note III, j.

This statement of the law reaches directly to the facts of the present case. Appellees procured purchasers in the persons of Daugherty and Albers, according to the evidence which the jury accredited in reaching a verdict, and appellant negotiated a sale to them on terms which were apparently satisfactory to him and them. There is no evidence that he was compelled to modify the terms in order to consummate the sale, but his concessions were, as far as the evidence discloses, entirely voluntary and of his own making.

We find nothing in the law as stated by the authorities which declares that the procuring agent shall be denied his compensation on account of a modification of the original terms as proposed to the agent.

It is next contended that appellees cannot recover compensation for their services on account of having failed to pay the license fee imposed by the city of Little Rock.

The law is well established that where a statute prohibits engaging in a business or calling without having procured a required license, or where it expressly vitiates all contracts made by unlicensed persons while engaged in such business or calling, a contract made by one who has no license is invalid and cannot be enforced. 25 Cyclopedia of Law, p. 633, and cases cited. But the ordinance exhibited in the record in this case merely prescribed the amount of the license fee, and contains neither a penalty nor a prohibition against engaging in the business without license, nor does it undertake to invalidate a contract made by an unlicensed person. Such an ordinance does not prevent the recovery on a contract made without having procured a license. *Pangborn* v. *Westlake,* 36 Iowa, 546; *Miller* v. *Ammon,* 145 U. S. 421; *Amato* v. *Dreyfus,* (Tex.) 34 S. W. 450; *Gunnaldson* v. *Nyhus,* 27 Minn. 440.

The amount of the verdict is for a less sum than appellees were entitled under the instructions, if they were entitled to a verdict at all, but appellant can not complain of this. The jury were doubtless influenced to find for the smaller sum because one of appellees expressed, in a letter written to appellant after the consummation of the sale, his willingness to accept a commission of 2½ per cent. on the purchase price. But, as we have said, appellant can not complain of this leniency shown him by the jury.

We find no error in the record, and the judgment is affirmed.

HILL, C. J., dissenting.