NELSON *v.* STOLZ.

4-5403                                    127 S. W. 2d. 138

Opinion delivered March 20, 1939.

*M. P. Matheney,* for appellant.

*J. K. Mahoney, H. S. Yocum, Emon A. Mahoney* and *Charles E. Wright,* for appellee.

*Jack Holt,* Attorney General, Amicus Curiae.

HUMPHREYS, J.   This is a suit by appellee, who is and was a real estate agent or broker, against appellant, brought by him in the second division of the circuit court of Union county to recover a commission in the sum of $1,000 for selling certain undivided interests in minerals under a certain 110 acre tract of land in Union county, Arkansas, owned by appellant.   Appellee alleged

that under the contract he was to receive as compensation 10 per cent. of the sales price; that he made a sale of an undivided one-fourth interest in said minerals to George W. James for a consideration of $8,250 as a result of the transaction, and the sale of an undivided one-half interest in the minerals under ten acres of said land to J. H. Alphin for $1,500, entitling him to $150, and that he did certain curative work on titles, entitling him to $25, and prayed judgment against appellant and the Exchange Bank & Trust Co., garnishee, in the total sum of $1,000, and by amendment to the complaint alleged that he was a real estate broker duly licensed by the Arkansas Real Estate Commission at the time of the transaction.

Appellant filed an answer denying generally all the allegations in appellee's complaint and pleaded by way of defense that appellee's services were to be gratuitous, and that he was precluded from recovering any amount as commissions for effecting the sales by reason of the further fact that at the time of the transactions he had not obtained a broker's license from the Arkansas Real Estate Commission to conduct a real estate business in Arkansas under the provisions of act 148 of the Acts of 1929 and act 142 of the Acts of 1931 amending the former act (now Pope's Digest, §§ 12476-12485).

The cause proceeded to a trial and at the conclusion of the testimony appellant requested the court to instruct a verdict for her, but the court denied the request over appellant's objection and exception, and submitted the cause to the jury upon the testimony and instructions given by him, resulting in a verdict and consequent judgment against appellant, from which is this appeal.

For the purposes of this appeal it is only necessary to make a short statement of the facts. Appellee had been a real estate broker or agent in El Dorado, Arkansas, for a number of years, engaged in selling royalties, leases and lands for his clients. He had formerly resided in Council Bluffs, Iowa, and appellant had resided in Omaha, Nebraska. They were old friends. In 1936 appellee made a trip to Omaha for the purpose of blocking up some mineral acreage in the Schuler area near El

Dorado and appellant rendered him very material assistance in procuring leases from people living in and around Omaha and in fact procured a lease from appellant on her 110 acre tract of land in Union county without consideration. Oil was not discovered until in March, 1937, at which time there was another oil boom in the Schuler field and a number of persons were wiring to appellant trying to purchase royalties and leases from her on her 110 acre tract so she wrote to appellee, who was her friend, calling his attention to the fact that she had rendered him material services back in 1936 in procuring leases and asked his advice regarding the sale of her royalties. Appellee answered her letter on March 24, 1937, offering her any assistance he could give her in return for the help she had given him in Omaha and urged her to come to Arkansas. Several letters and telegrams passed between them and appellee testified that she called him on long distance telephone and asked him to handle her property and that he replied to her that he would do so for 10 per cent. of whatever the property might be sold for and that she agreed to do this. She denied that she ever agreed to pay him 10 per cent. over the telephone for effecting sales of her royalties or leases and there is nothing in any of the telegrams or letters which passed between them before she came to Arkansas showing that she did enter into any such contract.

She decided to go to El Dorado and arrived there April 2, 1937, and was met at the train by appellee. The evidence is conflicting as to just what part appellee took in the sales of her property, but a sale was effected on April 3 between appellant and George W. James covering a one-fourth royalty interest in her entire 110 acres for the total sum of $8,250 the contract of sale being evidenced by a written contract of sale and purchase which provided for an escrow of the deed and money, examination of the title, etc. A part of the purchase money was paid by George W. James to appellant and the balance was evidenced by a cashier's check which was deposited together with appellant's deed in the Exchange Bank & Trust Co., El Dorado, subject to approval of title. The

title required some curative work, but was finally approved on May 6, 1937.

While appellant was in El Dorado, a sale was effected through the assistance of appellee to an undivided one-half interest in the minerals under ten acres of said land to J. H. Alphin. Alphin deposited $1,500 in the First National Bank of El Dorado and appellant deposited her deed. The deposits were made under an escrow agreement subject to the approval of title on April 5, 1937, in the First National Bank of El Dorado, but the title was finally approved on June 7, 1937, and $750 was accepted by appellant instead of $1,500 on account of a disagreement relative to the amount of minerals she conveyed to him.

According to the undisputed testimony appellee was not a licensed broker under the statutes referred to at the time he claims to have made a contract with appellant for the sale of her property nor at the time the sales were made and the escrow agreements relative thereto were made. On April 18, 1937, differences arose between appellant and appellee and she wrote him a letter to the effect that on account of the differences which had arisen she had decided to discharge him as her agent. On April 23, 1937, he wrote to her that the deal was practically closed and his work was all done and demanded 10 per cent. of the amounts for which the minerals had been sold as his fee, amounting to $975 plus $25 for doing certain curative work relative to the titles to the property.

On April 28, 1937, after appellee had been discharged appellee applied to the Arkansas Real Estate Commission for a broker's license and dated his application back to April 1, 1937, and on April 28, 1937, he obtained a broker's license No. 422 for the year 1937. Although appellant has raised a number of questions on this appeal for a reversal of the judgment obtained against her, her main contention is that the judgment should be reversed and the cause dismissed because at the time the sales were made appellee had no license from the Arkansas Real Estate Commission to conduct a real estate business and that the subsequent acquisition of a state license did

not entitle him to recover a commission. Section 12476 of Pope's Digest provides as follows:

"It shall be unlawful for any person, firm, partnership, co-partnership, association or corporation to act as a real estate broker or real estate salesman without first having complied with every provision of this act and having secured a regular, valid license issued by the Arkansas Real Estate Commission, authorizing the performance of such acts."

The last clause of § 12477 of Pope's Digest provides as follows:

"No recovery may be had by any broker or salesman in any court in this state on a suit to collect a commission due him unless he is licensed under the provisions of this act and unless such fact is stated in his complaint."

This court ruled in the case of *Birnback* v. *Kirspell*, 188 Ark. 792, 67 S. W. 2d 730, that a broker not having made an application for a license before effecting a sale of land was not entitled to recover a commission for making same.

Appellee argues that although he had not applied for a license and did not have a license on April 3 and 5 when the escrow agreements were entered into for the sale of said property the sale was not made until the escrow agreements were completed. This position is not sound because the escrow agreements related in no way to the commission which appellant was to pay appellee for making the sale. The appellee was not a party to the escrow agreements nor was it provided in them that he should not receive his commissions until the escrow agreements were completed. The escrow agreements simply provided that when appellant perfected the titles to the property she was entitled to receive her money and the purchasers entitled to receive their deed. It is true that the escrow agreements provided that in case she did not perfect her title to the property the certified checks should be returned to the purchasers and the deeds returned to her. But the contract to pay appellee 10 per cent. for making the sale, if such a contract did exist, was not dependent upon the perfection of her title to the property. Appellant contracted in the escrow agreements to com-

ply with the requirements of the attorneys for the purchasers, but it did not provide that the broker or appellee should perfect the titles before he was entitled to his commissions. It is true that appellee had obtained a license at the time the titles were finally approved under the escrow agreements and that the money and deeds were delivered on May 26, in the case of the James sale and on June 7, in the case of the Alphin sale, but it is also true that he had no license on April 3 and April 5, 1937, when the sales had been effected and the escrow agreements had been entered into between appellant and the purchasers.

Whatever the contract may have been, whether for 10 per cent. of the purchase price or whether for gratuitous return for services appellant had rendered appellee in 1936, we think the parties themselves construed the contract when appellee admits that he was discharged from any further obligation and entitled to his commissions when appellee discharged him on April 18, 1937. It further appears that appellee claimed his commissions and threatened to bring a suit for them before he obtained a license. In the case of *Poston* v. *Hall*, 97 Ark. 23, 132 S. W. 1001, this court said:

"Where a real estate broker produces a purchaser who is ready, willing and able to purchase the property upon the terms under which the agent is authorized to negotiate the sale, and the owner refuses to convey, the agent is entitled to his commission."

It was said in the case of *Reeder* v. *Epps,* 112 Ark. 566, 166 S. W. 747, (quoting headnote No. 1 and headnote No. 3):

"In the absence of a special contract providing otherwise, an agent employed to sell or find a purchaser for land, earns his commission and is entitled to recover the same when he procures a purchaser ready, willing and able to buy upon the terms named, and the principal enters into a binding contract with the produced purchaser, or having an opportunity to do so declines to accept the purchaser."

"When A. employed B. to sell land for him, an obligation is implied on A.'s part not only to furnish a good

title, but a marketable one, and if A. fails to do so upon the production by B. of a purchaser ready, willing and able to buy the land, B. earns his commission, notwithstanding a defect in the title which prevented the sale.''

This court said in the case of *Lasker-Morris Bank & Trust Co.* v. *Jones,* 131 Ark. 576, 199 S. W. 900, that:

''The broker, having presented a proposed purchaser who is capable of entering into a contract of purchase, and willing to do so, has earned his commission when the vendor accepts him and enters into a valid contract with him for the sale of the land, even though the sale is never in fact consummated by reason of the failure of the proposed purchaser to perform his part of the contract.''

This court also said in the case of *Emerson* v. *E. A. Strout, Farm Agency,* 161 Ark. 378, 256 S. W. 61, that:

''The import of the contract (brokerage contract) was to the effect that there should be a completed sale or exchange of the lands in order for appellees to earn their commission, but, even so, under the law, it was only necessary for the agent to produce a purchaser, ready, willing and able to comply with the contract of sale and purchase.''

This court said in the case of *Busey* v. *Felsenthal,* 178 Ark. 42, 9 S. W. 2d 775, (quoting syllabus), that:

''Brokers with whom a royalty interest was listed for sale could recover the commission agreed upon where they procured a purchaser ready, willing and able to buy, but the owner subsequently refused to carry out the contract of sale, and breached it by selling to another.''

We think under these opinions as well as under the opinion rendered in the case of *Birnbach* v. *Kirspel,* 188 Ark. 792, 67 S. W. 2d 730, that the date of the sale to George W. James was on the date of April 3, 1937, and that the sale of J. H. Alphin was on April 5, 1937, when he presented the purchasers or procured the purchasers, according to his testimony, ready, willing and able to comply with the contract of sale and purchase. All that appellant had to do under the escrow contracts was to comply with reasonable requirements for perfecting her title in order to specifically enforce the contract against the purchasers, and likewise the purchasers had a right

to specifically enforce the contract against her when the title was perfected which perfection of the title was incumbent upon appellant under the escrow contract.

It being undisputed in the record that appellee had no license at the time he procured these purchasers who entered into an enforceable contract with appellant, that fact alone (the failure to have a license) prevents him from recovering a commission in this case. If he had had a license at the time he procured these purchasers he could have then sued and recovered his fee without reference to the escrow contracts which did not concern him.

The court should have instructed a verdict under the undisputed facts in the case for appellant when requested to do so, and on acount of his failure to do so the judgment is reversed, and the cause is dismissed.