SAVO *v.* MILLER.

5-619                                    276 S. W. 2d 67

Opinion delivered March 14, 1955.

*Chas. F. Cole* and *S. M. Bone,* for appellant.

*J. J. McCaleb, W. D. Murphy, Jr.,* and *Fred M. Pickens,* for appellee.

MINOR W. MILLWEE, Justice. This action was brought by plaintiffs, Peter Savo and Petar Mestrovic, against defendant, Herman Miller, to recover a commission for services allegedly rendered in connection with the sale of certain manganese lands located in Independence County.

The original complaint alleged:

"That on or about the ............ day of January, 1950, the defendant, Herman Miller, approached the plaintiff, Peter Savo, regarding his assistance in obtaining a buyer for a tract of approximately 2,547 acres of manganese lands located in Independence County, Arkansas, and as a result of their negotiations, the plaintiff, Petar Mestrovic, was brought into the transaction, and the defendant, Herman Miller, thereupon entered into an oral agreement with these plaintiffs whereby the plaintiffs were to prepare maps and reports on the manganese

field located near Cushman, Independence County, Arkansas, and to furnish same to the defendant, Herman Miller, and assist the said Herman Miller in selling said tract of approximately 2,547 acres, known as the Denison Lands, and upon which the said defendant, Herman Miller, at the time held an option.

"That under the terms of such oral agreement, these plaintiffs were to receive a sum equal to twenty per cent (20%) of the sale price of said lands if same were sold for any sum up to the total sales price of $280,-000.00; and in the event said lands sold for any sum in excess of said amount of $280,000.00, these plaintiffs were to receive one-third each of any amount in excess of $280,000.00.

"That in reliance upon such agreement these plaintiffs made a survey and investigations of the manganese field aforesaid, prepared maps and reports of same, and introduced the defendant to parties who eventually found a purchaser of said lands.

"That on or about the 18th day of October, 1950, said lands were sold to the Westmoreland Manganese Corp., for a total consideration of, or sale price of, $382,050.00.

"That under the terms of said agreement, and for the services rendered by these plaintiffs, they were entitled to the sum of $124,033.66.

"Wherefore, plaintiffs pray judgment against the defendant in the amount of $124,033.66, together with all costs herein laid out and expended, and all other proper relief."

In response to defendant's motions to make more definite and certain and his "Request for Admission of Fact and Genuineness of Document," plaintiffs further alleged that the agreement sued upon was entered into in the State of Arkansas; that pursuant to the contract plaintiffs came to Arkansas and made a survey and field investigations of the Cushman Manganese Field in Independence County which included the lands in question and

during which they compiled sketches and notes from which they subsequently completed maps and reports in their office in New York; that said maps and reports were furnished to and used by defendant and prospective buyers in perfecting the sale of the lands; that plaintiffs put defendant in contact with Harry H. Holloway who together with his associates purchased said lands as the Westmoreland Manganese Corporation, the sale agreement being executed in Johnstown, Pa.; that plaintiffs have never been real estate brokers, and plaintiff, Petar Mestrovic, is an expert mining engineer; and that plaintiffs did not claim to have made a sale of the lands but were advised by defendant that such sale could not have been made without the help of plaintiffs.

Plaintiffs also admitted the genuineness of a certain letter signed by the parties and which was made an exhibit to an answer filed by defendant after the court had overruled a demurrer to the complaint. This document reads as follows:

"905 Central Ave.                 Telephone 168
"SOUTHERN MINING & MANGANESE COMPANY
          "Batesville, Arkansas
                  "January 28, 1950

"Mr. Peter Savo,
"136 West 78th Street,
"New York 24, N. Y.
"Dear Mr. Savo:

"I hereby confirm our verbal agreement relative to the sale of the 2,400 (twenty-four hundred) acres of manganese property owned by Reed Denison upon which I have a purchase option.

"I hereby agree to pay you and your partner a commission of twenty per cent (20%) of the sales price expected by me for this property, in the event the above mentioned property is sold to a client of yours during the term of my option or its extention.

"The expected sales price for the above mentioned property is $280,000,—(two hundred and eighty thousand dollars).

"If your client should pay more than the above by me expected price, I hereby agree that such an excess price should be and will be equally divided between myself, yourself and your partner *i.e.* one-third each of us.

"Sincerely yours,
"/s/ Herman Miller,
"Herman Miller.

"Agreed:
"/s/ Peter Savo.
"/s/ P. Mestrovic."

Defendant then filed a motion to dismiss the action on the ground that plaintiffs were seeking recovery of a real estate broker's commission and had no right to maintain such action because of their failure and inability to allege or show their compliance with Ark. Stats. 71-1302 to 71-1309, inclusive. This appeal is from an order sustaining the motion to dismiss.

The questions for determination are (1) whether under the pleadings and admissions plaintiffs must be held to have acted as real estate brokers in this state without complying with our regulatory statute; and, if so, (2) whether they are hereby precluded from recovery of a commission or compensation where the acts performed constitute only a single transaction.

In the absence of a statute specifically made applicable to a single or isolated transaction the general rule is that a person engaged in some other business who acts as a broker on a single occasion is not precluded from recovering compensation by failing to procure a broker's license. 8 Am. Jur., Brokers, § 155. The statutes of most states come within the general rule but in some states the statutes are so worded or construed as to apply to a single act or transaction. 12 C. J. S. Brokers, § 67.

The applicable Arkansas statute was first enacted as Act 148 of 1929 which, as amended, now appears as Ark. Stats., §§ 71-1301 to 71-1311, inclusive. Under its terms either a resident or non-resident of Arkansas is prohibited from acting as a real estate broker or salesman in this state without securing a license and other-

wise complying with the provisions of the act. It is provided in § 71-1302:

"A real estate broker within the meaning of this act [§§ 71-1301—71-1311] is any person . . . who for a compensation or valuable consideration sells or offers for sale, buys or offers to buy, auctions or offers to auction, or negotiate the purchase or sale or exchange of real estate, or who leases or offers to lease, or who sells or offers to sell leases or royalties of whatsoever character, or rents or offers for rent, any real estate or negotiates leases thereof or of the improvements thereon, for others, as a whole or partial vocation.

"The term real estate broker shall also include any person employed by the owner of lots or other parcels of real estate, at a stated salary or commission, to sell such real estate, and who shall sell or exchange or offer or attempt to negotiate the sale or exchange of such lot or parcel of real estate.

"A real estate salesman within the meaning of this act is any person . . . who for a compensation or valuable consideration is employed, whether directly or indirectly, by a real estate broker as a whole or partial vocation to sell or offer to sell, or to buy or offer to buy, or to auction or offer to auction, or to negotiate the purchase or sale or exchange of real estate, or to lease, to rent or offer for rent any real estate, or to sell or offer to sell lease or royalties of whatsoever character, or to negotiate leases on any real estate, or of the improvements thereon, as a whole or partial vocation.

"One act for a compensation or valuable consideration as set forth in the two preceding paragraphs shall constitute the one performing it a real estate broker or real estate salesman within the meaning of this act. . . .

"No recovery may be had by any broker or salesman in any court in this State on a suit to collect a commission due him unless he is licensed under the provisions of this act and unless such fact is stated in his complaint."

In construing our statute this court has consistently held that an unlicensed broker or salesman cannot maintain a suit for compensation for his services. *Birnbach* v. *Kirspel,* 188 Ark. 792, 67 S. W. 2d 730; *McMillan* v. *Dunlap,* 206 Ark. 434, 175 S. W. 2d 987. In the Birnbach case we re-affirmed a statement from *Stiewel* v. *Lally,* 89 Ark. 195, 115 S. W. 1134, as follows:

"The law is well established that where a statute prohibits engaging in a business or calling without having procured a required license, or where it expressly vitiates all contracts made by unlicensed persons while engaged in such business or calling, a contract made by one who has no license is invalid and cannot be enforced."

In *Texarkana* v. *James & Mayo Realty Company,* 187 Ark. 764, 62 S. W. 2d 42, appellees who resided and maintained offices in Texarkana, Texas, insisted they were not subject to the provisions of § 71-1302, *supra,* where they sold and otherwise dealt in real estate located in Arkansas but most of the negotiations relating thereto were consummated in their Texas offices. This court held that appellees were acting as real estate brokers in violation of our statute and a city ordinance requiring the payment of an occupation tax although they did not reside or have a place of business in Arkansas. In reference to § 71-1302, *supra,* the court said that a person need not do all the things mentioned in the statute as constituting a broker to be so classified.

In *Campbell* v. *Duncan,* 84 Fed. Supp. 732, a nonresident real estate broker, J. W. King, was held barred from recovering a commission in effecting a sale of Arkansas lands where the only acts performed by him within this state consisted of transporting the buyer from Mississippi to Arkansas and introducing him to the seller who showed the property. In spite of the fact that the employment agreement, most of the negotiations and final consummation of the sale occurred outside this state, we think Judge LEMLEY correctly construed the effect of our statute when he said: "In any event, this suit was brought to recover a real estate com-

mission for the sale of land and, in connection with the sale, King performed some of the material acts of a real estate broker within the State of Arkansas without complying with its laws, and it is not material for whom he was acting at any particular moment; the important fact is that he was acting, and that his actions formed a necessary and material part of the transaction, and that he was acting without compliance with the statute.''

In those jurisdictions with statutes like our own which expressly make unlawful a single or isolated transaction of an unlicensed salesman or broker in negotiating a sale, the decisions are practically unanimous in holding that no compensation can be recovered under such circumstances by the unlicensed person. This was the conclusion reached by the California Court in *Haas* v. *Greenwald,* 196 Cal. 236, 237 P. 38, 59 A. L. R. 1493, affirmed in 275 U. S. 490, 48 S. Ct. 33, 72 L. Ed. 389, and the single act provision was held constitutional and valid under facts similar to those in the case at bar.

In *Gregory* v. *Roedenbeck,* 141 Tex. 543, 174 S. W. 2d 585, a farmer acted in an isolated transaction by merely furnishing the name of a prospective purchaser. In sustaining a motion to dismiss his action for a commission the court said: ''It is true that the general rule that a person engaged in other business, who acts as a broker on a single occasion but not as a regular business, is not precluded from recovering compensation by reason of having failed to procure a broker's license, pursuant to a statute requiring those engaged in the business of a broker to obtain a license. But this rule is subject to the qualification that when the statute is specifically directed at one act, the actor is precluded from recovering compensation. . . . To say that the one act contemplated by § 4 really means a series of acts, is to defeat the expressed purpose of the Legislature.'' Other cases to the same effect are: *Grammer* v. *Skagit Valley Lumber Co.,* 162 Wash. 677, 299 Pac. 376; *Kenney* v. *Paterson Milk & Cream Co.,* 110 N. J. L. 141, 164 A. 274, 88 A. L. R. 1416; *Knight* v. *Watson,* 221 Ala. 69,

167 So. 841; *Massie* v. *Dudley,* 173 Va. 42, 3 S. E. 2d 176; *Owens* v. *Capri,* 65 Wyo. 325, 202 P. 2d 174; *Hazlehurst,* v. *Southern Fruit Distributors,* 146 Ga. Appeals 453, 167 S. E. 898.

For reversal plaintiffs contend they are not real estate brokers and do not seek a recovery as such under their contract with defendant, but are merely seeking compensation for services rendered as "mining engineers," a major portion of which services admittedly took place in this state. It is true the complaint alleges that one of the plaintiffs is a mining engineer and that neither is a real estate broker, but it did not state in what capacity they were working. The vocation of plaintiffs becomes immaterial if they performed as a real estate broker or salesman in this state in violation of the statute. Now it must be conceded that the sole objective of most real estate transactions is the sale of the property. It is clear from the pleadings and the admissions of fact that such is the case here. Under the terms of the written agreement upon which plaintiffs must prevail, if at all, their right to a commission depended solely on their procurement of a purchaser at a stipulated price within the period of defendant's option. According to the pleadings they accomplished this vital and important act for which they seek a commission without having complied with the statute. Under the plain terms of the statute their failure in this respect is fatal to their cause of action and the court correctly sustained the motion to dismiss.

Affirmed.

WARD, J., not participating.