PLUMMER *v.* REEVES.

Opinion delivered May 6, 1907.

1. CONVERSION—MITIGATION OF DAMAGES BY RETURN OF PROPERTY.—The fact that one who converted property returned it to the owner does not bar the latter's right to recover damages for the conversion, if he suffered any in excess of the value when returned. (Page 13.)

2. APPEAL—ISSUES NOT TRIED BELOW.—A cause will not be tried upon appeal on issues not presented in the court below. (Page 13.)

3. TRESPASS—REMOVAL OF TIMBER.—Where a contract authorized defendant to fell and remove timber from plaintiffs' land prior to a certain date, defendant was not liable as a trespasser if he removed the timber from the place where it was cut to the banks of a navigable river within the stipulated time, and after that time floated it down the stream, though the river bank was part of the tract from which the timber was cut. (Page 14.)

Appeal from Phillips Circuit Court; *Hance N. Hutton,* Judge; affirmed.

*H. F. Roleson,* for appellants.

The court erred in construing the contract under which the timber was cut from other lands. Parol evidence is admissible to show that the parties considered time of the essence of the contract. 1 De G. & Sm. 444; 50 Am. Dec. 600, and note to same; 2 Barb. 270. There could have been no other object in inserting the clause limiting the time in which the timber was to be removed from the land. 1 Sandf. Ch. 52; 2 Barb. 622; 6 Hun, 32; 69 N. Y. 269; 89 Me. 404; 36 Atl. 631; 1 Beach, Mod. Cont. Law, pp. 743, 747, 749; Chitty on Cont., 433 and note; 26 N. W. 488; 85 N. W. 570. The same would be true of a reservation by a vendor of the timber on lands, the same to be removed by a certain date. 35 Am. Rep. 683; 10 Metc. 155; 102 Mass. 275; 69 N. Y. 264. Where time is of the essence of the contract, the vendee is entitled to that part of the timber which he cuts and removed within the term mentioned. 6 Me. 81; 61 Me. 141; 13 *Id.* 122; 102 Mass. 375; 35 Vt. 19; 43 N. H. 277; 25 N. W. 170.

*John I. Moore,* for appellee.

A deed of standing timber to be removed within ten years passes the title, and does not constitute a mere license to take off chattels within the time limited. 22 L. R. A. 641. Failure to remove logs after they are cut within the time named in the contract for the removal of timber within a definite time does not forfeit the title. 32 L. R. A. 102; 27 *Id.* 434. In entering on the land within a reasonable time after the time mentioned the contract has expired for the removal of timber already cut might make one liable in *trespass quare clausum* for entry, but not for the value of the trespass. 20 Am. Rep. 119. The timber may be removed after the time limit has expired. 32 Am. Rep. 193; 55 L. R. A. 513.

RIDDICK, J. This action was brought by J. A. Plummer and others against W. D. Reeves to recover $5,099.74 as damages for the taking and conversion of certain gum and cottonwood logs belonging to plaintiffs. The defendant appeared, and

upon his motion the plaintiff was required to make his complaint more definite and certain as to the time when and the place where the logs were taken and converted. The plaintiffs thereupon filed an amendment to their complaint, in which they alleged that the logs converted by defendant were taken from section 6, township 1 north, range 5 east, and from other lands described, and that they were removed subsequent to the 27th day of May, 1904, some as late as the spring of 1905.

The defendant denied that plaintiffs were the owners of the logs alleged to have been converted, or that he had taken or converted any logs owned by plaintiffs; and by way of counterclaim he alleged that plaintiffs had taken and converted logs belonging to defendant of the value of $200, on account of which he asked judgment for that amount.

On the trial it was shown that plaintiffs were the owners of the lands described in the complaint; that the defendant had without right or authority cut timber on section six belonging to plaintiff and had hauled the logs to the bank of the river and piled them there for shipment at a point known as "Shack Durham's place." After the logs had been placed there, one of the plaintiffs ascertained that the logs had been cut, and informed the defendant that his agents had cut this timber from land of plaintiffs. The defendant admitted that this had been done through mistake, and offered to buy the logs, but they could not agree on a price. Plaintiffs then threatened to bring replevin for the logs, and defendant told him to take them, and plaintiffs accepted them. At this time the logs were supposed to be on the bank of the river, but the river was overflowed at that time, and it was some weeks or months afterwards before the plaintiffs undertook to remove them. When the logs were scaled before being rafted, it was ascertained that they did not measure as many feet as the defendant had previously admitted that he had cut. The theory of the plaintiffs to explain this shortage is that the defendant removed some of the logs after they were piled on the river bank. The explanation of the defendant is that, after the logs were turned over to the plaintiffs, they were washed away or floated off by the overflow from the river. The defendant introduced testimony tending to show that all the logs cut from section six were piled

at a certain point on the river front, that they were turned over to the plaintiffs, and that none of them were removed from that place by defendant or his agents, but that some of these logs were seen floating in the river after they had been delivered to the plaintiffs. The question as to whether any of these logs were removed by defendants was properly submitted to the jury, and they found for defendants. Plaintiff contends that the evidence shows that defendants admitted having taken from section six more logs than plaintiff received, but this is explained by the evidence that shows or tends to show that some of these logs floated down the river during the high water after they had been turned over to plaintiffs. This timber was cut and piled on the river bank before the 27th of May, 1904. Plaintiffs do not sue for any conversion prior to that time, but specifically alleged that the logs were converted after that date, and the testimony on both sides was confined to the question as to whether, after being piled there, they were subsequently removed by plaintiffs. It is true that if defendant cut and removed from land owned by plaintiff in section six more timber than he afterwards turned over to plaintiff, he would be responsible therefor. Nor does the mere fact that the timber converted was subsequently restored to plaintiff bar his right to recover damages for the conversion if he suffered any in excess of the value when returned. 28 Am. & Eng. Enc. Law (2d Ed.), 683. But no such issues as these were tried in this action. The conversion was alleged to have taken place after the time when the logs were placed on the bank, and that was the question submitted to the jury, and it is too late to present new issues now. The finding of the jury on this matter in favor of plaintiff settles the matter, so far as this appeal is concerned.

The other timber alleged to have been converted was cut from other lands now owned by plaintiffs, but which were purchased by them after the former owner had sold the gum and cottonwood timber thereon to a lumber company. This sale of timber was made on the 27th day of May, 1899, and the written contract of sale stipulated that the purchaser should "have five years in which to remove the timber from said land." The lumber company afterwards transferred the contract to defendant Reeves. He cut the timber and hauled the

logs to the river bank and piled them there for shipment. The place at which the logs were placed on the river bank was on the land from which the timber was cut and which was then owned by plaintiffs. The timber was placed on the river bank for shipment before the 27th day of May, 1904, the date on which the right of defendant to cut and remove the timber from the land expired, but it was not shipped from the river bank until afterwards.

The court instructed the jury, over the objection of the plaintiff, that if the timber was cut from the land prior to the 27th day of May, 1904, the defendant would have a reasonable time in which to remove it after that date, and that if no timber was cut subsequent to that date the plaintiffs could not recover, even though the logs were removed after that time.

We need not consider whether, abstractly considered, this declaration of law is correct or not. This contract limits the time in which the timber could be removed from the land, and there may be room to doubt whether, if nothing more had been done prior to the expiration of that limit than to fell the trees on the land, defendant could have subsequently removed the timber without being liable for conversion. But that question is unimportant here, for the undisputed evidence shows that the logs alleged to have been converted were removed from the place where they were cut to a point on a navigable river from which they were to be shipped. This was a substantial compliance with the terms of the contract, although the river bank was part of the tract from which the timber was cut. The evidence does not show that defendant cut or removed from the land after the limit of the contract had expired any logs except those that had already been piled on the river bank for shipment, and a few that had been carried by the high water a short distance back from the bank where they had been piled for shipment. After these logs had been cut and removed to the river bank for shipment the contract was performed, and the title to the logs fully vested in defendant, and the fact that they were gathered up afterwards and floated or shipped down the river did not constitute conversion.

We are of the opinion that plaintiffs made out no case against defendant for conversion of logs cut from their lands,

and the judgment could not be reversed, even if the instructions were erroneous, for no prejudice resulted.

On the whole case, the judgment is affirmed.