BARTON *v.* JORDAN.

4-8858                                            221 S. W. 2d 21

Opinion delivered June 13, 1949.

*Reuben Chenowith,* for appellant.
*Robt. J. White,* for appellee.

HOLT, J. This appeal is from a judgment against appellant, Barton, on a jury's award of $200 in favor of appellee, Jordan, a licensed real estate broker, as commission on the sale of certain farm land.

The material facts were to the following effect: Some time in April, 1948, prior to the 21st of that month, appellant entered into an oral contract with the appellee, a real estate broker, to sell a piece of farm land, which appellant owned, for $3,300, out of which appellee was to receive a commission of $200. Appellee found and introduced to appellant a purchaser, Mr. Carter, whom he showed the property, was satisfied with it, and later, on the 21st of April, purchased the farm direct from the owner, Barton. There was no definite time limit in the contract between appellant and appellee.

On April 21st, after appellant on one or two occasions had made changes in the selling price of the farm, he (appellant) along with the purchaser, Mr. Carter, went to the home of appellee, Jordan, and there it was definitely decided and agreed that Carter was to pay appellant $3,300 for the farm and appellant agreed to pay appellee a commission of $200.

Carter testified that some time prior to the 21st, after appellee had advised him that the Barton farm was for sale, and that he, appellee, was handling it, that "the next day my wife and I went out to look the place over and Mr. and Mrs. Barton were both at home, and we talked to them about it. A price of $3,300 was agreed on. We were satisfied with the place. And with the price."

Immediately following and after some negotiations with reference to a loan to pay part of the purchase money, Carter further testified that he and Jordan went to appellant's farm: "Q. What occured there? A. Barton and I made an agreement to pay Jordan. I made an agreement with Barton to pay him $3,300, and he was to pay the $200 commission. Q. Mr. Barton was to pay Jordan $200 commission? A. Yes, sir. Q. Was that before or after you went out there? A. That was while

we were there. Q. You then agreed on a price of $3,300?
A. Yes, sir. Q. And Mr. Barton agreed to pay Jordan
$200 of that? A. Yes, sir.''

Immediately following this meeting, on the same day
(the 21st), appellant and Carter left appellant's home
with the understanding that they were to meet Jordan in
Russellville for the purpose of financing and completing
the loan, but instead appellant and Carter went to Mor-
rilton, and in the absence of appellee, and without his
knowledge or consent, appellant voluntarily reduced the
price of the land to $3,000 and sold it to Carter for that
amount after Carter had arranged for the purchase
money from his brother-in-law. The record reflects that
the first information appellee had of the change in the
selling price, after the agreement, supra, was given to
him over the phone by the purchaser, Carter, after the
deal had been consummated.

Under these circumstances, appellee was the pro-
curing cause of the sale, had earned, and was entitled to
his commission, as the jury found under proper instruc-
tions from the court.

We have many times announced the controlling rule
in circumstances such as are presented here. In *Sticwel*
v. *Lally,* 89 Ark. 195, 115 S. W. 1134, we said: ''When
appellant accepted the fruits of appellees' services with-
out giving them notice of revocation of their authority,
he bound himself to pay the stipulated commission. * * *

''Where the terms of sale are fixed by the vendor,
in accordance with which the broker undertakes to pro-
duce a purchaser, yet if, upon the procurement of the
broker, a purchaser comes, with whom the vendor nego-
tiates, and thereupon voluntarily reduces the price of
the property, or the quantity, or otherwise changes the
terms of sale, as proposed to the broker, so that a sale
is consummated, or terms or conditions are offered
which the proposed buyer is ready and willing to accept,
in either such case the broker will be entitled to his
commission at the rate specified in his agreement with
the principal,'' and in *Hodges* v. *Bayley,* 102 Ark. 200,
143 S. W. 92, we said: ''A broker who has been employed

to sell property is entitled to his commission where he has brought about between the principal and another negotiations which resulted in a sale which was consummated by the principal. *Hunton* v. *Marshall,* 76 Ark. 375, 88 S. W. 963. The broker is entitled to his commission in such event, although the principal sold upon terms different from those mentioned to the broker. *Stiewel* v. *Lally,* 89 Ark. 195, 115 S. W. 1134." See, also, *Hight* v. *Marshall,* 124 Ark. 512, 187 S. W. 433.

Based on the above facts and authorities, the court correctly instructed the jury as follows: "You are instructed that if you find from a preponderance of the testimony in the trial of this case, that plaintiff was a licensed realtor as required under the laws of Arkansas, and as such realtor entered into a contract with the defendant as his agent for the securing of a purchaser of defendant's realty, for an agreed commission, and that under such agreement, defendant listed his property with plaintiff as his real estate agent, and that subsequently and while such contract was in force and effect, if it was so made, plaintiff brought to defendant a person or persons as prospective purchasers, who subsequently purchased the property from defendant through such introduction and efforts of the plaintiff, if found so made, then your verdict should be for the plaintiff for the commission though the sale may have in fact been completed by the owner himself.

"No. 4. You are instructed that if you find from a preponderance of the testimony that plaintiff as the agent of defendant, brought a purchaser or purchasers of the realty of defendant, to him, and through an introduction or disclosure of the purchase brought about negotiations through which the sale of the property was effected, then if you so find, the commission alleged to be due would be payable by defendant and if you so find, your verdict should be for the plaintiff."

On appellant's contention that appellee was acting for both the buyer and seller and therefore was not entitled to recover, but little need be said. We find no evidence in the record to sustain this contention.

It appears that appellant made no issue on this contention at the trial and no instruction with reference thereto was asked by appellant.

We held in *Keller* v. *Whittington,* 106 Ark. 525, 153 S. W. 808, that: (Headnote 3) "Where a question was not made an issue in the trial below, and no proof taken directed to it, it is too late to raise the question for the first time on appeal." See, also, *Plummer* v. *Reeves,* 83 Ark. 10, 102 S. W. 376.

Appellant's fourth contention that the court erred in refusing to give his requested instruction No. 1 is untenable. The instruction provided: "You are instructed that if you find that the defendant entered into a contract listing his land with the plaintiff for sale of defendant's land and that said contract, if there were a contract, was for any specified length of time and that plaintiff furnished a buyer able and willing to buy before defendant revoked the contract, your verdict should be for the plaintiff; but you are further instructed that if defendant and plaintiff entered into a contract for plaintiff to sell defendant's land and said contract was not for any specified length of time, defendant had the right before a bargain was made while negotiations were unsuccessful before plaintiff had earned a commission to revoke the contract and the plaintiff cannot thereafter claim a commission on a sale made by defendant even though the sale was made to a customer with whom the plaintiff had negotiated."

The court correctly refused to give this instruction for the reason that the evidence shows that appellant at no time, prior to the date that he alone completed the sale to the purchaser, Carter, for $3,000 cash, revoked, or attempted to revoke, his contract with appellee. Appellee was entitled, under his contract with appellant, to a reasonable time within which to consummate the sale of the property to his prospect, Carter. Here, he was prevented from consummating the sale by appellant's own acts.

We said in *The Addressograph Company* v. *The Office Appliance Company,* 106 Ark. 536, 153 S. W. 804:

"If after a broker, employed to sell property, had in good faith expended money and labor in advertising for and finding a purchaser, and was in the midst of negotiations which were evidently and plainly approaching success, the seller should revoke the authority with the purpose of availing himself of the broker's efforts and avoiding the payment of his commissions, it could not be claimed that the agent had no remedy. In this case it might well be said that there was an implied contract on the part of the principal to allow the agent a reasonable time for performance, that full performance was wrongfully prevented by the principal's own acts, and that the agent had earned his commission."

We conclude, therefore, that on the whole case, the evidence was ample to support the jury's verdict, that no error appears, and accordingly, the judgment is affirmed.