## PETROLEUM PRODUCTS CORPORATION v. SKLAR et al.

### Civ. A. No. 2716.

United States District Court
W. D. Louisiana, Shreveport Division.

Dec. 30, 1949.

Sam Rorex, Little Rock, Ark., and Malcolm E. Lafangue, Shreveport, La., for plaintiff.

Wilson, Abramson & Maroun, Shreveport, La., for defendants.

PORTERIE, District Judge.

Plaintiff has instituted suit claiming some $9,839 against the defendant, itemized as follows: $6,924 as the value of casing belonging to the plaintiff and purchased by the defendant from one (apparently fictitious) known as O. M. Higgins; $1,000 for loss of the use of the property; $1,500 for time and money spent in locating it, and $415 as interest. Defendants claim that they are only obligated to return the casing or at the most its market value.

Do we have here a Louisiana or an Arkansas contract? Carl Ellis was delegated by the defendants to go to Arkansas to meet Charles Kreeger, who had advised them that he (Kreeger) had found some pipe for sale. Ellis met Kreeger and Alvin Heagney at the Little Rock airport. He went with Kreeger and Heagney to the situs of the pipe. He inspected the pipe and closed the contract. After Ellis had closed the deal, he telephoned Sklar (head of defendant company) at Shreveport, Louisiana, and asked if he (Ellis) should remain in Arkansas to load the pipe. Sklar told Ellis to arrange with Kreeger to employ A. R. Hall, of Benton, Arkansas, to haul the pipe to Shreveport. The defendant company then issued its check, made payable to O. M. Higgins, a

ficticious person, and the check was cashed in Arkansas.

■ We declare the legal relations here to be controlled by the laws of Arkansas. See 17 C.J.S., Contracts, § 12, pages 336-344 (11. What Law Governs); also, 15 C.J.S., Conflict of Laws, §§ 17 and 18, pages 926-936.

Moreover, the only alternative would be that the laws of Louisiana applied; but the parties mutually advance that the main point at issue here—the amount of recovery by the plaintiff—would be fixed by the laws of Louisiana in the same manner as by the laws of Arkansas, with the exception that punitive damages are allowed by the laws of Arkansas.

Charles Kreeger was well known to the controlling personnel of the defendant company—particularly to Mr. Sklar, controlling owner, as they are brothers-in-law. We doubt seriously that O. M. Higgins ever existed, except in the imagination of Kreeger. Someone endorsed the name of "O. M. Higgins" to collect the check—then follows the endorsement of Kreeger, who received the money.

Kreeger and Higgins are total strangers to the owners of the pipe. The pipe, simply and plainly, was stolen from the plaintiff. You may not finally characterize Kreeger in this transaction, unless it be determined in the future, fully and clearly, whether or not Higgins is actually a live or a fictitious person; the preponderance of the evidence now is that Higgins never actually existed.

■ In support of the law in Arkansas that the plaintiff may recover special damages for conversion, and that such damages, in addition to the value of the property taken, should be allowed for the injury approximately in the amount sustained from the conversion, we cite the following cases: Clark v. Bales, 15 Ark. 452; Plummer v. Reeves, 83 Ark. 10, 102 S.W. 376; Kelly v. McDonald, 39 Ark. 387.

At page 885, 53 American Jurisprudence, Section 94, we quote: "The purpose which the law seeks to accomplish by giving an owner of personal property a right of action against one who converts it is not to enrich the owner of the property at the expense of the wrongdoer, but to give compensation for the loss of the property. Hence, the general rule is that in an action for the conversion of personal property, the plaintiff may recover the fair, reasonable market value thereof. The damages recoverable, however, are not necessarily limited to the market value of the property. The rule establishing the market value as the measure of damages recoverable prevails where there are no special circumstances requiring a different measure of damages to be applied. Where the market value fails to furnish the true measure of damages for the conversion of a chattel, the actual damages may be shown by appropriate evidence."

■ In the instant case, the defendant corporation, acting through Mr. Ellis, its agent, is found to be in bad faith. Ellis neglected to ascertain whether or not Higgins, the supposed owner of the pipe, existed. The least of diligence by Ellis on his visit to inspect the offered pipe would have given him the proof of the fraud. Kreeger was or should have been known to him; sufficiently so that he would, and should, not have accepted the name of an owner out of the thin air—with no proof offered, true or false, by Kreeger of his ownership. As we stated during the argument, we do not think Mr. Sklar, the head of the defendant corporation, personally and knowingly, perpetrated a fraud; but, nevertheless, his corporation, as aforesaid, did.

■ So, in the face of a conversion, where the negligence of the corporation is tantamount to being fraudulent, constructively certainly not innocent, we should allow first, the cost to plaintiff of its property actually paid, to wit: $4724, plus $356.32 for hire in transportation, or a total actual cost of $5080.32. Next, the plaintiff has fully proved the expenditure of $221.05 in tracing and locating the property. This we allow.

It is further shown that plaintiff was damaged in the amount of $1547.89, which was paid to renew lease rentals that were

lost because the pipe was taken, as is shown by Exhibit P 9. The above amount was paid, and because of the unlawful conversion of this pipe, the amount became a total loss to the plaintiff. If the pipe had not been stolen plaintiff would have been able to drill another well. The pipe was stolen and plaintiff lost $1547.89 in rentals paid because of the theft and conversion. This item is not too remote, but is certain and should be repaired in damages. However, only $1000 for this item is pleaded in the complaint. We allow this $1000.

If an upper court should disagree with this court as to quantum, then the amount allowed herein, above what might be the market price of the pipe (there was a drop in values from the date of purchase of the pipe by the plaintiff to the date of conversion by the defendant), we call punitive damages. This type of damages is allowed by the Arkansas law under the character of facts we have found.

So, we shall sign judgment in favor of the plaintiff and against the defendants in the total sum of $6301.37, with interest thereon from August 30, 1948, the date of conversion.

We ask, also, that counsel for plaintiff present a suggested findings of fact and a suggested conclusions of law for the court, to be submitted in 20 days.