MURPHY *v.* BRADLEY.

4-5867 138 S. W. 2d 791

Opinion delivered March 25, 1940.

*Surrey E. Gilliam,* for appellant.

*T. O. Abbott,* for appellee.

SMITH, J. This suit was brought by appellee to recover a commission on the sale of certain real estate in the city of El Dorado. In support of his cause of action, appellee testified that, while the property had not been listed with him for sale, he had been authorized by appellant to sell it at a net price of $7,500, his compensation being any excess over that amount. He knew that one Tanner was interested in the property, and he priced it to Tanner at $8,000, but failed to make the sale. He told appellant about the offer he had made Tanner, and placed appellant and Tanner in contact with each other. He admitted that he had not been given the exclusive right to sell the property, nor any definite time within which to sell it. The theory on which he claims commission on the sale appears in the following question and answer: "Q. Under the agreement there you would not be entitled to a commission until you had found a purchaser who was willing and able to pay $7,500 net to Mr. Murphy? A. No, sir; I wasn't; but I would have—under the legal ethics of business I would have the right to be called into a deal which was closed with my client, and

not leave me out with no consideration at all, when I had made a price to my client which would protect my commission." Tanner was the only person to whom appellee showed the property, and Tanner refused to buy, because the price was too high, and he then sent Tanner to appellant to see if they could not get together on a deal.

Appellant testified that he made no contract with appellee to sell the property, but told appellee that the property belonged to appellant's son, and that he had authority to sell it at a price which would net his son $7,500, and that only the excess above that amount would be paid as a commission if appellee found a purchaser. Appellee told him he wanted to show the property to Tanner, but appellee did not tell him that he had shown the property to Tanner until after he—appellant —had sold the property to Tanner. The sale to Tanner involved the trade of other property as part consideration, all of the value of $6,000. When he authorized appellee to sell at $7,500, he had no authority to accept less, but his son later authorized the deal he made with Tanner. After authorizing appellee to sell at a net price of $7,500, he had no further conversation with appellee about the matter, and was not notified by appellee that he was "in any manner handling a deal or attempting to handle a deal on this place with Tanner, or anybody else."

On his cross-examination, appellant testified that Tanner came to see him about buying the property, and he asked him "if he was dealing with Mr. Bradley, and he said that he was not, that that deal was off, and he was dealing with me." Appellant did not advise appellee that Tanner was dealing with him, as Tanner stated he would not pay what appellee asked.

Tanner testified that he paid "around $6,000 for the property in cash and exchange for other property," that appellee showed him the Murphy property in September and priced it to him at $8,500. He declined to buy and the negotiations were broken off. He would not have paid $7,500. Appellee said nothing more to him about the property until after he had purchased it

from appellant. After appellee had shown him the property, and he had declined to buy, he learned that the property belonged to a Mr. Murphy; he did not know which Murphy, and he did not get this information from appellee, and that when he contacted appellant, the negotiations, "as far as Mr. Bradley (the appellee) was concerned, were done and over."

An exhaustive annotation of the law applicable to the issues here presented appears in the case of *Leicht-Benson Realty & Construction Corp.* v. *J. D. Stone & Co.*, 138 Va. 511, 121 S. E. 883, appearing in 43 A. L. R. 1100.

The annotator there announces the general rule to be as follows: "General rule. The general proposition is well established that if property is placed in the hands of a broker for sale at a certain price, and a sale is brought about through the broker as a procuring cause, he is entitled to commissions on the sale even though the final negotiations are conducted through the owner, who in order to make a sale accepts a price less than that stipulated to the broker. The law will not allow the owner of property sold to reap the fruits of the broker's labor and then deny him his just reward."

After stating the general rule to be as above quoted, the annotator states an exception to the general rule as follows: "Exception to rule. When the contract between the broker and his principal expressly makes the payment of commissions dependent on the obtaining of a certain price for the property, the broker cannot recover, even though the owner sells at a less price to a person to whom the broker first shows the property unless the broker is prevented from making the sale by the fault of the principal." A large number of cases are cited by the annotator from many jurisdictions fully sustaining this exception, and no cases are cited to the contrary. See, also, *Johnson* v. *Knowles,* 169 Ark. 1089, 277 S. W. 868.

Instructions should have been given announcing both the general rule and the exception thereto, so that both theories of the case might have been considered by the

jury; but as the instructions given do not appear to have presented appellant's theory, the judgment must be reversed and the cause will be remanded, with directions to submit, on the one hand, the question, whether the sale had been brought about by appellee as the procuring cause, in which event he would be entitled to a commission on the sale; or whether, on the other hand, he had failed to find a purchaser ready, willing and able to buy on terms which he was authorized to offer, or was prevented from making such sale by the fault of his principal, and, if not, he would be entitled to no commission.

For the failure to submit appellant's theory of the case, sustained, as it was, by ample testimony requiring its submission, the judgment must be reversed, and the cause will be remanded, with directions to submit both theories as herein indicated.