YOUNGBLOOD *v.* KUHN.

4-8830                                          219 S. W. 2d 615

Opinion delivered April 18, 1949.

---

*Guy B. Reeves* and *Henry E. Spitzberg*, for appellant.

*H. A. Tucker* and *Neva B. Talley*, for appellee.

HOLT, J. This is a suit by appellee, Eva John Kuhn, agent of appellant, Harold B. Youngblood, for an accounting of certain commissions on sales of real estate, and specifically, the sale of the DeSoto Hotel in Hot Springs. Appellant Youngblood, denied every material allegation in appellee's complaint. From a decree awarding appellee $2,028, is this appeal.

For reversal, appellant, Youngblood, says: "1. The decree is clearly against the preponderance of the evidence. 2. Appellee performed no compensable service according to the terms of her contract, in that she did not 'furnish' a buyer; hence she has no valid claim. 3. The contract of February 20, 1946, signed by appellee and appellant as manager for U. S. Realty Sales, Inc., a Mississippi corporation, was an integrated contract between appellee and the corporation, as a disclosed principal, and only the corporation could be held accountable to appellee, if, indeed, she has a valid claim."

These contentions are so interrelated that we shall consider them together.

The evidence shows that appellant, Youngblood, under a contract between him and the U. S. Realty Sales Corporation of Mississippi, paid that company $1,000 for the franchise, or, exclusive right, to operate a real estate business in Arkansas under the name of U. S.

Realty Sales, Inc., of Little Rock, Ark. In addition, he agreed to pay the Mississippi corporation a certain percent of commissions on all Arkansas sales. This Mississippi corporation was not licensed in Arkansas, and the U. S. Realty Sales, Inc., was not, in fact, a corporation.

Youngblood, under his contract with the Mississippi corporation, opened his office in Little Rock, and on February 20, 1946, employed appellee, Mrs. Kuhn, as his agent, under the following contract: "U. S. Realty Sales, Inc., 314 Exchange Building, Little Rock, Arkansas. Corporation and Agents' Agreement. This agreement entered into on this 20th day of February, 1946, by and between the U. S. Realty Sales, Inc., Little Rock, Arkansas, a Mississippi Corporation, Home Office, Jackson, Mississippi, to be hereinafter known as the Corporation, and Eva John Kuhn, to be hereinafter known as the Agent. Whereas, the Agent desires exclusive rights to use the said copyrighted sales system in the district of Hot Springs, State of Arkansas. The Corporation does grant and assign with all of the privileges thereto pertaining unto Eva John Kuhn, the exclusive right as agent in the territory above set forth as an affiliate of the Corporation on the following terms and conditions to-wit:

"The Corporation Agrees: To furnish the agent with listings from the Main Office of properties listed with all state offices in the Corporation, by other Managers, and from other sources, and to aid, assist and cooperate to the fullest extent with the said Agent in closing of all sales.

"To pay to the said Agent 30% of all commissions on all transactions in the district above set forth after the Home Office commission had been deducted, and when the buyer is furnished by the agent; and 50% of all commissions when the buyer is sold by the agent; and will pay 10% of the commission to the agent for all listings sold by the Corporation after commission of the Corporation has been deducted; and to furnish the said Agent all equipment, such as Listing Blanks, Option

Forms, Advertising Layouts, etc. The Corporation agrees to pay for advertising in the above named district, to promote listings on prospects to be used by the above named Agent and Corporation.

"The Agent Agrees: To operate the said business as the U. S. Realty Sales of Arkansas, to furnish the Corporation with all listings, all salable property that is priced right and worthwhile in his district; to furnish the Corporation with the name and address of all prospective purchasers of property to be found in his district, regardless of whether these parties want to buy in his district or any where else in the United States; if necessary to furnish bond at the expense of the Corporation; not to operate in any way or to be interested in any way in real estate business other than the business of the U. S. Realty Sales, Inc. The Agent agrees that if he or she desires of his own accord to cancel this agreement he will give the Corporation at least fifteen days' notice. It is mutually agreed and understood that the above named Agent must operate as an Agent of the U. S. Realty Sales, Inc.

"That when listings, sales agreements and contracts are furnished by other parties through the Corporation or the Agent that they shall receive an agreed commission and that all net commissions, earnings, and receipts shall be divided as above set forth. (This includes listings from Realtors, Bankers, Brokers, Lawyers, etc., who usually receive 50% commission); that this instrument contains the complete agreement of the parties hereto and that if any part of this agreement is contrary to the laws of any state the same is null and void, but that it shall not invalidate any other part of this agreement; and that this agreement is not negotiable or transferable by the Agent, except on written consent, first secured from the Corporation.

"In witness whereof, the parties hereto have set their hands on the day and the year first above written. U. S. Realty Sales, Inc. By /s/ H. B. Youngblood, Manager. Witness to signature of the Manager: /s/ Helen Hays. /s/ Eva John Kuhn, Agent."

Appellee, thereafter, opened her office in Hot Springs, made a number of sales, under her contract, and received most of the commissions due her except the one in controversy here. She had authority from the owner to sell the DeSoto Hotel for $350,000. About March 18, 1946, J. G. Asimos of Peoria, Ill., came to her office, and quoting from appellant's brief: "The real estate agent who first contacted me in regard to the sale of the DeSoto Hotel was Harold Youngblood's office in Hot Springs. Mrs. Kuhn, Mrs. Eva Kuhn, I believe, was in that office. The next day, I believe, about a day or two after Mrs. Kuhn first contacted me I met Mr. Young-blood. I went to the Arkansas Trust Company to see Mr. Sexton, along with Mrs. Kuhn. The discussion about the hotel first took place with Mrs. Kuhn at the Youngblood office in the Sigler Building.

"Mrs. Kuhn did not talk with us about the DeSoto Hotel; she made an appointment for Mr. Youngblood to show us the hotel. I would say I finally closed the deal about three months later (paying $375,000 for the property). As a matter of fact I had gone to Mr. Youngblood's office here relative to considering the purchase of property either in Oklahoma or Mississippi. . . . Q. Did Mrs. Kuhn have anything to do with the details with reference to the consummation of the sale of this hotel? A. Nothing except the information."

Mrs. Kuhn testified that she took Asimos to her banker, Mr. Sexton, and arranged for holding money in escrow until the purchase was completed. She offered to show him the hotel, but he told her he had already been through it, having previously stayed there as a guest.

We do not detail the testimony, but after reviewing it all, we think the preponderance thereof shows that appellee was the first to contact Asimos, found the purchaser, as agent for Youngblood, and was the procuring cause of the sale which was consummated by Youngblood.

It was held in *Long* v. *Risley*, 188 S. W. 2d 132, (208 Ark. 608): "(Headnote 4) Substantial evidence justified judgment granting broker commission on sale of defend-

ants' farm listed with him on ground that broker was procuring cause, notwithstanding sale was made by defendant. (Headnote 1) A real estate agent, bringing about or procuring sale of property, placed in his hands for sale, . . . or through introduction of purchaser or disclosure of his name to owner, is entitled to commission on sale price though sale is made by owner." See, also, *Murphy* v. *Bradley,* 200 Ark. 208, 138 S. W. 2d 791, 128 A. L. R. 427.

Mrs. Kuhn's contract was solely with Youngblood. He was her manager, and she his agent. In no sense was she a rival agent of Youngblood. She had no contract with the Mississippi corporation. The contract itself not only so shows but Youngblood admitted as much in his testimony, from which we quote: "Q. (Mr. Tucker) Did you ever read this contract before you signed it? A. (Youngblood) I created it. . . . Q. Mr. Youngblood, that contract there, the form is the same form of contract you had with the U. S. Realty Sales over in Mississippi, isn't it? A. Not exactly. Q. Well, did you change the terms of it some? A. Yes, I created that contract myself. . . . By the Court: Q. Mr. Youngblood, this contract which has been introduced, one of the contracting parties is referred to as U. S. Realty Sales, Incorporated, of Little Rock, Ark., a Mississippi corporation, home office, Jackson, Mississippi, to be hereafter known as the corporation. Is the U. S. Realty Sales, Incorporated, of Little Rock, Arkansas, an Arkansas corporation? A. (Youngblood) It is not, your Honor. Q. Did you have any Arkansas corporation at all? A. I did not, Sir. Q. You operated under just a trade name of U. S. Realty Sales of Arkansas? A. That is right; that was a trade name through the corporation in Mississippi."

The trial court found, as reflected in the decree: "And the court being well and sufficiently advised as to all matter of fact and law arising herein doth find: that there existed a contract between plaintiff and defendant Harold Youngblood for division of commissions on sale of real estate; that the plaintiff should recover judgment for her commission on the sale of the DeSoto Hotel;

that the total commission paid by the owners of the DeSoto Hotel according to their interpleader filed in this court in case No. 77745 was $8,450; that the U. S. Realty Sales Corporation of Mississippi, or the 'home office' commission out of this amount as alleged in their answer and as adjudicated in said case was $1,690, or 20% of the total amount; that the remaining Youngblood and Kuhn commission on the DeSoto Hotel sale was $6,760; and that the plaintiff, Eva John Kuhn, is entitled to 30% of that amount under the terms of her contract, or the sum of $2,028; and that the testimony was insufficient to establish that she is entitled to commission on any other property mentioned."

After a careful review of the record, we are unable to say that the findings of the Chancellor were against the preponderance of the evidence and accordingly, the decree must be, and is affirmed.