**Shannon O'GLEE, Plaintiff,**

v.

**T. C. TRIGG, Defendant.**

**Civ. No. PB 67 C–1.**

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

July 11, 1967.

Harry B. Friedman, Sherman Kusin, Texarkana, Tex., for plaintiff.

John F. Gibson, Dermott, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, District Judge.

This diversity action involves the right of the Plaintiff, Shannon O'Glee, to recover a commission from the defendant, T. C. Trigg, claimed as a broker's fee in connection with the sale

of 4,052 shares of stock in the First State Bank of Crossett, Arkansas, to Jess P. Odom, President of National Investors Life Insurance Company, Little Rock, Arkansas.

## STATEMENT OF THE CASE

There is no question as to jurisdiction as diversity of citizenship is admitted and although the amount in controversy is in conflict, exceeds the sum of $10,000, exclusive of interest and costs.

The parties to this proceeding are in substantial agreement as to the facts leading up to and including the sale of the shares of stock owned by the defendant in the First State Bank of Crosset, Arkansas, to Jess P. Odom.

The plaintiff was, during the time of the alleged transaction, a securities dealer duly registered and licensed under the laws of the State of Arkansas. No question is raised as to his authority to act in this field. Neither was there any question raised as to any conflict with this particular transaction and his regular duties as a licensed dealer.

The defendant, during the time mentioned herein, was President of the First State Bank of Crossett, Arkansas, and owned 4,052 shares of stock in the bank which he desired to sell. While the Plaintiff O'Glee was visiting the Defendant Trigg at the bank in Crossett on an entirely different mission, the defendant advised him that if he, the defendant, knew of any one who would be interested in its purchase, he "might sell the bank."

After leaving the bank in Crossett and driving to Hamburg, on further reflection the plaintiff called the defendant and asked if he was serious in his remarks about selling the bank. On learning that he was serious as to his intention the plaintiff inquired as to his price and was advised by the defendant that he would take $85.00 a share for his 4,052 shares of the bank stock.

The plaintiff then inquired if his "fee" would have to be added and the defendant responded by saying, "No, he could take care of me out of that". It was

further understood between the parties that should a sale be made at $85.00 per share the plaintiff would receive a "finder's fee" of $5.00 per share.

The testimony is undisputed that the parties entered into a verbal agreement, special in nature and limited to a specific sale's price per share with a definite fee based thereon as a commission for special services. The plaintiff makes no claim that he was given the exclusive right to sell the stock, or that he had any authority to sell it for any sum more or less than $85.00 per share.

Subsequently the plaintiff contacted the ultimate purchaser, Jess P. Odom. From information furnished the plaintiff by the defendant in a meeting at the Pine Bluff airport the plaintiff proposed to sell the defendant's stock in the bank to Mr. Odom at a price placed on the stock by the defendant—$85.00 per share. As a result, Mr. Odom became interested in the purchase of the stock and the plaintiff arranged a meeting between him and defendant Trigg. Additional meetings were held between the parties, which resulted in negotiations for the sale by the defendant of the stock and its purchase by Mr. Odom. During the final stages of the negotiations between Mr. Trigg and Mr. Odom the plaintiff was excused from the room and the sale between the parties was consummated at $80.00 per share.

Following the consummation of the sale at a price less than the original offering a question developed as to the fee, if any, earned and rightfully due O'Glee for services rendered in bringing about the sale of the stock and which is in question for determination by the Court. It is at this point that the testimony is in conflict.

From the testimony, the defendant Trigg apparently came to the decision during the negotiation stages with Mr. Odom that he would be unable to realize his sale's price of $85.00 per share. At this stage and after several meetings by the parties, which included the plaintiff O'Glee, the defendant Trigg advised the plaintiff he would not be able to pay him,

the plaintiff, a commission, notwithstanding the fact that O'Glee had brought the parties together through a mutual friend, a Mr. Ray Preddy, or that he had provided the interested purchaser with certain information furnished by the defendant Trigg, including computation of quarterly operating statements from the beginning of the operation of the bank until and including March of 1966.

It is important to mention that O'Glee was also under restrictions not to furnish any prospective purchaser with the name of the bank, its location, or his, defendant's name, as owner of the stock until the prospective purchaser was known and approved by the defendant Trigg. It may also be noted that in addition to the sale and delivery of the stock owned by Mr. Trigg, 1,000 shares of stock of Mr. Otto Miller, Executive Vice President of the Crossett bank, was sold to Mr. Odom for $75.00 per share. The plaintiff had nothing to do with this part of the transaction and makes no claim for any fee therefor.

There appears to be no question but after several meetings by all the parties the defendant Trigg assumed the responsibility for further negotiations and the ultimate sale of the stock to Mr. Odom. The plaintiff was not relieved or discharged of the agreement even though O'Glee was not permitted to be present during the final stages of the negotiations and consummation of the sale.

The plaintiff claims an entitlement of $5.00 a share, or a total fee of $20,260.00 for finding a buyer for the defendant's bank stock of 4,052 shares.

The defendant contends that he does not owe a commission in that pursuant to the verbal agreement he was to receive $85.00 per share when he actually received only $80.00 per share. He offered to reimburse the plaintiff "for expenses". He tendered a check on the Trigg Realty Account at the Dermott State Bank in the sum of $250.00 payable to plaintiff O'Glee, which on the face of the check purported to pay in full the finder's fee for sale of the First State Bank, Crossett, Arkansas. O'Glee returned the check with a demand for the total sum of $20,260.00.

## FINDING OF FACTS

The Court finds from the record presented in the case, testimony, exhibits, and argument of counsel, as follows:

1. That there is diversity of citizenship between the parties to this action, and the amount in controversy exceeds the sum of $10,000, exclusive of interest and costs.

2. That plaintiff Shannon O'Glee was at all times mentioned herein a securities dealer and stock broker duly registered and licensed under the laws of the State of Arkansas.

3. That defendant T. C. Trigg was President of the First State Bank of Crossett, Arkansas, and owned 4,052 shares of stock which he purported to sell. The stock owned by the defendant, together with the stock owned by one Mr. Otto Miller amounted to the principal ownership or controlling interest in the bank.

4. That plaintiff and defendant entered into a verbal agreement whereby the plaintiff would become the agent or broker of the defendant for the purpose of finding a purchaser for the defendant's stock in the bank at a sale's price of $85.00 per share, out of which the plaintiff would realize $5.00 per share as a commission or "finder's fee" for his services. The defendant Trigg under the agreement was to receive a net sale's price of $80.00 per share.

5. Under the agreement there was further limitation or restriction on the authority of the plaintiff to the effect that he was not to furnish any prospective purchaser with the name of the bank, its location, or the defendant's name as owner of the stock until said purchaser was known and approved by defendant.

6. Subsequent to the agreement between parties, the plaintiff contacted Mr. Jess P. Odom, President of National Investors Life Insurance Company, Little Rock, Arkansas. The plaintiff

sought and obtained a meeting with Mr. Odom through a mutual friend and former employee of Mr. Odom. As a result of said meeting Mr. Odom became interested in the purchase of the stock in the bank provided there would be furnished to him appropriate information as to its (the bank's) operation, soundness, location and ownership.

7. The Court further finds that the plaintiff conveyed this information to the defendant and on obtaining approval of Mr. Odom as the prospective purchaser requested and obtained from the defendant Trigg information desired by Mr. Odom about the bank, which included computation of quarterly operating statements from its beginning of operation until and including March of 1966. Such information was delivered by the defendant to the plaintiff in a meeting at the Pine Bluff, Arkansas, airport which he, the plaintiff, subsequently delivered to Mr. Odom at his office in Little Rock.

8. The Court also finds that after delivering the information from the defendant to Mr. Odom, the plaintiff O'Glee arranged for a meeting between the defendant Trigg and Mr. Odom for the purpose of discussing the proposed sale and purchase of the stock; that additional meetings were held between parties, including the plaintiff O'Glee, which resulted in the consummation of the purchase of the stock by Mr. Odom at a price of $80.00 per share and that during the final stages of the negotiations between defendant Trigg and Mr. Odom the plaintiff was excused from the room and not permitted to be present.

9. The Court further finds that before the final consummation of the sale of the stock by defendant Trigg, and its purchase by Mr. Odom, the defendant advised the plaintiff that he would be unable to pay him, the plaintiff, a commission since it appeared he could not realize a total of $85.00 per share for the sale of his stock, but was not discharged or relieved of the agreement.

10. The defendant Trigg tendered a check on the Trigg Realty Account at the Dermott State Bank in the sum of $250.00 to the plaintiff O'Glee which purported to pay in full the "finder's fee" for sale of First State Bank, Crossett, Arkansas, which was returned.

## CONCLUSIONS OF LAW

There is a substantial body of Arkansas law which governs the entitlement of a fee or commission under a contract between parties dating from the early decisions of the Arkansas Supreme Court. However, it would be appropriate to relate general conclusions of law applicable from various jurisdictions and recognized as controlling in a matter such as is involved in this case.

Generally speaking, it is a rule of law that a broker's compensation is ordinarily a commission on the price or value of that which is sold, dependant upon the terms of the employment contract and the performance of the services contracted for. There must be actual employment, expressed or implied, and services rendered. 12 Am.Jur.2d, Sections 157, 158, and cases cited from numerous jurisdictions.

To entitle a broker to compensation or commission, he must accomplish that which he undertook to do in his contract of employment and in every case reference must be had to the terms of the particular employment in order to determine whether or not his duties have been performed. It is clear that a broker who has performed all the services as required under his contract of employment is entitled to his commissions. He must be the procuring cause by producing a purchaser who is ready, able and willing both to accept and live up to the terms offered by his principal. Sections 182, 183, supra.

It is also a well recognized general rule that where a broker, instead of procuring a person who is ready, able and willing to accept the terms his principal authorized him to offer at the time of his employment, procures one who makes a counteroffer more or less at variance with that of his employer, the employer is at liberty either to accept

the proposed party upon the altered terms, or to decline. If he accepts, he is legally obligated to compensate the broker for the services rendered. If he refuses, he incurs no liability therefor. Section 185, supra.

So much for the general rule applicable to this case from jurisdictions and citations too numerous to mention.

In an early decision of the Arkansas Supreme Court a rule was announced that "the law is well established that, in a suit by a real-estate agent for the amount of his commissions, it is immaterial that the owner sold the property, and concluded the bargain. If, after the property is placed in the agent's hands, the sale is brought about or procured by his advertisements and exertions, he will be entitled to his commissions; or if the agent introduces the purchaser or discloses his name, to the sellers, and, through such introduction or disclosure, negotiations are begun, and the sale of the property is effected, the agent is entitled to his commissions, though the sale may be made by the owner". Scott v. Patterson & Parker, 53 Ark. 49, 52, 13 S.W. 419, 420.

■ The doctrine that an agent earns a commission by producing a buyer, ready, willing and able to take the property on the terms fixed by the seller is well .established. Pinkerton v. Hudson, 87 Ark. 506, 113 S.W. 35; Poston v. Hall, 97 Ark. 23, 132 S.W. 1001; Fike v. Newlin, 225 Ark. 369, 282 S.W.2d 604.

It is not necessary that an enforceable contract be executed or whether the sale is negotiated, if the agent procures a person who is ready, willing and able to purchase upon the terms of the sale. Dillinger v. Lee, 158 Ark. 374, 250 S.W. 332; Boyles v. Knox, 211 Ark. 426, 200 S.W. 2d 966; Poston v. Hall, supra.

However, it is unnecessary to go so far in declaring the applicable law to the present case. The defendant Trigg voluntarily altered the price or the terms of the sale of the stock. Neither is it necessary to determine whether or not the voluntary altering of the price through

negotiations with the purchaser, Mr. Odom, was done in bad faith for the purpose of depriving the plaintiff of a commission.

The rule of law on this question, which is sufficient here, is clearly stated by Mr. Rapalje, § 100, as follows:

"Where the terms of sale are fixed by the vendor, in accordance with which the broker undertakes to produce a purchaser, yet if, upon the procurement of the broker, a purchaser comes with whom the vendor negotiates, and thereupon voluntarily reduces the price of the property, or the quantity, or otherwise changes the terms of sale, as proposed to the broker, so that a sale is consummated, or terms or conditions are offered which the proposed buyer is ready and willing to accept, in either such case the broker will be entitled to his commission at the rate specified in his agreement with his principal." Stiewel v. Lally, 89 Ark. 195, 208, 115 S.W. 1134, 1139.

■■ Thus, if property is placed in the hands of a broker for sale at a certain price, and a sale is brought about through the broker as a procuring cause, he is entitled to commissions on the sale even though the final negotiations are conducted through the owner, who in order to make a sale accepts a price less than that stipulated to the broker. The law will not allow the owner of property sold to reap the fruits of the broker's labor and then deny him his just reward. 43 A.L.R. 1104, Anno.; Stiewel v. Lally, supra; Hight v. Marshall, 124 Ark. 512, 187 S.W. 433; Murphy v. Bradley, 200 Ark. 208, 211, 138 S.W.2d 791, 128 A.L.R. 427.

These statements of the law are applicable to the facts of the present case. The plaintiff procured the purchaser in the person of Jess Odom. The defendant negotiated the sale on terms which were apparently satisfactory to him and Odom. There is nothing to indicate that he was compelled to modify the terms in order to consummate a sale. His conces-

sions were as the testimony discloses entirely voluntarily and of his own making.

It is noted that there is an exception to the rule. When a contract between an agent and his principal expressly makes the payment of a fee dependent upon the obtaining of a certain price for the property, the agent cannot recover, even though the owner sells at a less price to a person to whom the agent procures, unless the agent is prevented from making the sale by the fault of the principal. Murphy v. Bradley, supra.

However, the exception to the general rule is not applicable in this case, because the sale had been brought about by the plaintiff O'Glee as the procuring cause, which in the opinion of the Court entitled him to a commission on the sale.

The plaintiff's contention that he is entitled to $5.00 for each share as a "finder's fee" in this case under the agreement is without merit. To be entitled to the full amount under the agreement it would have been necessary for the stock to have brought a price of $85.00 per share, unless it was shown that the altered price was negotiated in bad faith to prevent the payment of the commission. There is no contention that the price or terms of the sale was altered in bad faith for the purpose of depriving the plaintiff of his commission.

Since the plaintiff is entitled to a commission for his services under the terms of employment, and is not entitled to $5.00 per share since the stock did not bring the asking price, the amount of the broker's commission can thus be determined by the reasonable worth of his services.

In Hodges v. Bayley, 102 Ark. 200, 203, 143 S.W. 92, 93, a rule under similar circumstances was established by the Court, as follows:

"It has been held that a broker who has been employed to sell property is entitled to his commission, where he has brought about between the principal and another negotiations which resulted in a sale which was consummated by the principal. Hunton v. Marshall, 76 Ark. 375, 88 S.W. 963. The broker is entitled to his commission in such event, although the principal sold upon terms different from those mentioned to the broker. Stiewel v. Lally, 89 Ark. 195, 115 S.W. 1134. If the amount of the commission is not agreed upon at the time of the employment, then the broker is entitled to recover a reasonable amount therefor."

The Louisiana Supreme Court stated the rule so well established, as follows:

"It is well settled that where a broker, who is employed to sell property at a given price, and for an agreed commission, has opened negotiations with a purchaser, and the principal, without terminating the agency or negotiations so commenced, takes it into his own hands, and concludes a sale for a less sum than the price fixed, the broker is entitled, at least, to a ratable proportion of the agreed commission." Grace v. Peytavin Planting Co., 156 La. 93, 100 So. 62, 43 A.L.R. 1096, 1097; 12 Am.Jur.2d, Section 225.

The doctrine of entitlement for services on reasonable worth basis in absence of agreement applicable in a particular case was clearly established by the Supreme Court in 1921, which continues to be the rule, as follows:

"If plaintiff broker procured purchaser for defendant's property, he was entitled to such a sum as commission as defendant agreed to pay him if there was an agreement, but, in the absence of an agreement as to compensation he was entitled to what his services were reasonably worth." Phillips v. Pike & Fisher, 148 Ark. 654, 227 S.W. 607. (Supreme Court of Arkansas, February 14, 1921.)

The Court is of the opinion that this rule is applicable in this case since the plaintiff was the procuring cause but is not entitled to the fee of $5.00 per share under the terms of the agreement. For the reasons stated hereinabove plaintiff should receive a sum which his serv-

ices are reasonably worth. In consideration of the record in this case, the facts and circumstances, it is the opinion of the Court that the sum of $5,000.00 would be reasonable for the services rendered by the plaintiff as the procuring cause in bringing about the sale of the stock involved in this proceeding.

An order will be entered in accordance with this opinion.