**In the Matter of STEELSHIP CORPORATION, Bankrupt.**

**VILAS AND SOMMER INC., Appellant,**

v.

**Emon MAHONY, Jr., Trustee, Appellee.**

**No. 77–1735.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 13, 1978.

Decided April 28, 1978.

Rehearing Denied May 16, 1978.

---

2. Defendant did not move the district court to correct the judgment order pursuant to Rule 35 or 36, F.R.Crim.P.

John Harris Jones, Pine Bluff, Ark., for appellant; Jones & Petty, Pine Bluff, Ark., on the brief.

Emon A. Mahony, Jr., Fort Smith, Ark., for appellee.

Before GIBSON, Chief Judge, VAN OOSTERHOUT, Senior Circuit Judge, and ROSS, Circuit Judge.

ROSS, Circuit Judge.

Appellant Vilas and Sommer Inc. (V&S) seeks to recover a brokerage fee for services rendered in procuring a buyer for the assets of SteelShip Corporation, which, on June 8, 1976, filed a voluntary petition in bankruptcy. The district court affirmed an order of the bankruptcy referee sustaining the trustee's objection to the claim filed by V&S. For the reasons stated herein, we reverse.

## I.

SteelShip Corporation is a designer and builder of ships and boats. In July of 1975 the corporation, through its president Edward Fry, placed an advertisement in the Wall Street Journal offering its shipyards for sale. Because SteelShip was thinly capitalized and therefore unable to take advantage of certain business opportunities, Mr. Fry was interested in finding someone to provide the corporation with needed capital through acquisition or merger.

Appellant V&S responded to the SteelShip advertisement by requesting further information. Along with a general sales and income history of SteelShip, Mr. Fry sent a letter to V&S on July 31, 1975, containing the following proposal:

We are seeking parties to provide the capital to:

1. Purchase Star's 80% interest for $900,000, or 100% interest for $1,125,-000.

2. Provide the credit or capital necessary to take advantage of the sales market available now and in future years.

With this information V&S began contacting prospective purchasers. The parties exchanged further correspondence and on January 29, 1976, V&S wrote to SteelShip mentioning for the first time that Dravo Corporation was interested in the proposed sale.

On March 11, 1976, V&S wrote another letter to Mr. Fry "relative to Dravo Corporation's continued interest in the acquisition of Steel Ship." This letter communicated the intention of V&S to arrange for representatives of Dravo to visit SteelShip's facilities in Pine Bluff, Arkansas. Thereafter, additional financial data was supplied by SteelShip to V&S and forwarded to Dravo.

Plans for a meeting were eventually finalized and Dravo representatives visited SteelShip from May 12 through May 14, 1976. By this time, SteelShip's financial outlook had dimmed. According to the testimony of Mr. Fry, SteelShip was considering the possibility of its having to file a petition in bankruptcy. As a consequence, negotiations between Dravo and SteelShip shifted in focus from acquisition of the corporation to purchase of SteelShip assets. Mr. Fry testified:

Dravo had not been in Pine Bluff prior to May, 1976. They did exhibit interest in buying the assets. * * * Dravo's interest was in purchasing assets. They did not want to invest. The negotiations were always on purchase of assets. Negotiations is not a good word. We were talking about the possibility of their buying from the Trustee. Dravo was told that we might have to file bankruptcy.

SteelShip filed its voluntary petition in bankruptcy on June 8, 1976; Mr. Paul Lew-

ey was appointed receiver for the corporation on June 15. The bankruptcy referee succinctly described the subsequent events as follows:

Mr. Lewey immediately began to write to the various persons or business entities, that Mr. Fry, the president of Steelship, had told him had expressed any interest in Steelship. Mr. Lewey also explored the possibilities of an auction. By the time of the first meeting of creditors on July 22, 1976, Mr. Lewey was able to report to the creditors that Dravo had made an offer to the Receiver to purchase virtually all of the assets of the bankrupt. Mr. Lewey was elected Trustee at the first meeting of creditors, and thereafter on the 23rd day of July, 1976 petitioned the Court for approval of a private sale to Dravo which was granted by Order of this Court on the 9th day of August, 1976 and the sale was confirmed for $702,000.00 plus the assumption of some leases of the bankrupt.

\* \* \* \* \* \*

On July 22, 1976, Vilas & Sommer, Inc. filed its claim # 272 herein contending that "The bankrupt agreed to pay reasonable compensation to Vilas & Sommer, Inc., if it obtained a purchaser." The claim seeks 7% commission and a priority status as an expense of administration under § 64(a)(1) of the Bankruptcy Act.

On the facts as above stated, the referee concluded that V&S was not entitled to recover anything on its claim because (1) V&S had been employed "to find a purchaser of the stock of Steelship \* \* \* and such a purchase was never procured," and because (2) "[t]he Trustee had no agreement with [V&S] and did not ask for or receive any assistance from [V&S] in effectuating the eventual sale of the assets to Dravo \* \* \*." In a brief memorandum order the district court adopted the findings and conclusions of the referee as its own. V&S appeals from these rulings.

II.

We note initially that the parties do not dispute the existence of a valid and enforceable contract between V&S and SteelShip. Nor is there any dispute that the rights of the parties under the contract are controlled by Arkansas law. The point of disagreement exists in determining whether V&S earned a commission by performing in accordance with the terms of its employment.

■ In making this determination we begin by observing that Arkansas adheres to the general rule that a broker is entitled to his commission if he is the procuring cause of an eventual sale concluded between owner and purchaser. This oft-recited rule, adopted by the Arkansas Supreme Court in the early case of *Scott v. Patterson*, 53 Ark. 49, 13 S.W. 419 (1890), holds that

■f, after the property is placed in the agent's hands, the sale is brought about or procured by his advertisements and exertions, he will be entitled to his commissions; or if the agent introduces the purchaser, or discloses his name, to the seller, and, through such introduction or disclosure, negotiations are begun, and the sale of the property is effected, the agent is entitled to his commissions, though the sale may be made by the owner.

*Id.*, 13 S.W. at 420; *see also O'Glee v. Trigg*, 271 F.Supp. 121, 126 (E.D.Ark.1967); *Hartzog v. Dean*, 216 Ark. 17, 223 S.W.2d 820, 821 (1949); *Long v. Risley*, 208 Ark. 608, 188 S.W.2d 132, 133 (1945).

■ The trustee insists, and the referee concluded, that V&S is not entitled to a commission because V&S was hired to find a purchaser for stock and Dravo did not purchase the stock, but only the assets, of SteelShip. We do not find this distinction persuasive. For the question here is simply whether, under the terms of its employment, V&S procured a person who was willing to buy that which SteelShip was willing to sell.

That question must be answered in the affirmative. We do not doubt that Mr. Fry originally hoped in July of 1975 to locate a purchaser for SteelShip stock. However, nothing in the record convinces us that the

sale of assets eventually consummated was not within the contemplation of SteelShip's employment of V&S. On the contrary, the record shows that by May of 1976 SteelShip was seriously considering bankruptcy and actively negotiated with Dravo on that basis. As observed above, Mr. Fry testified that "[t]he negotiations [between Dravo and SteelShip] were always on purchase of assets. * * * We were talking about the possibility of their buying from the Trustee." Accordingly, we reject the argument that V&S did not perform because Dravo purchased assets instead of stock.

## III.

A more troublesome question is presented by the fact that the sale of assets to Dravo was concluded through SteelShip's trustee in bankruptcy. In examining this circumstance we pass quickly the referee's conclusion that V&S is not entitled to a commission because the trustee did not enter into an independent agreement with V&S. Apparently no contention was ever made that he had and clearly, if any claim to a fee is to be sustained, it is on the basis of the contract between V&S and SteelShip in existence on the date of the filing of the petition. We thus proceed to consider the effect of SteelShip's bankruptcy on the right of V&S to recover a commission.

■ Absent some express contractual provision so requiring, the filing of a petition in bankruptcy does not automatically terminate the bankrupt's obligations thereunder. Instead, section 70(b) of the Bankruptcy Act, 11 U.S.C. § 110(b), permits the trustee to either assume or reject those contracts of the bankrupt not fully performed at the time the petition is filed. Section 70(b) provides in part as follows:

The trustee shall assume or reject an executory contract, including an unexpired lease of real property, within sixty days after the adjudication or within thirty days after the qualification of the trustee, whichever is later, but the court may for cause shown extend or reduce the time. Any such contract or lease not assumed or rejected within that time

shall be deemed to be rejected. * * * A trustee shall file, within sixty days after adjudication or within thirty days after he had qualified, whichever is later, unless the court for cause shown extends or reduces the time, a statement under oath showing which, if any, of the contracts of the bankrupt are executory in whole or in part, including unexpired leases of real property, and which, if any, have been rejected by the trustee.

■■ One purpose of this section is to allow the trustee an opportunity to determine which of the bankrupt's contracts are beneficial to the estate and on that basis make an election whether to assume or to reject them. A parallel purpose is to clarify the effect of an assumption of liabilities by the trustee. It is well settled that the trustee cannot accept the benefits of an executory contract without assuming its burdens as well. *See, e. g., Schokbeton Industries, Inc. v. Schokbeton Products Corp.*, 466 F.2d 171, 175 (5th Cir. 1972). Thus, assumption of a contract by the trustee constitutes an "assumption by the estate of the bankrupt's liabilities, not as a matter of granting a distributive share, but by performance in full, just as if bankruptcy had not intervened." 4A Collier, BANKRUPTCY ¶ 70.43[2], at 524 (14th ed. 1975).

■ While section 70(b) requires the trustee to file a sworn statement showing which of the bankrupt's contracts have been *rejected*, no such requirement is imposed for an *assumption* of an executory contract. An assumption may be shown by word or by deed consistent with the conclusion that the trustee intended to assume. *See Brown v. Presbyterian Ministers Fund*, 484 F.2d 998, 1007 (3d Cir. 1973); *Nostromo, Inc. v. Fahrenkrog*, 388 F.2d 82, 84–85 (8th Cir. 1968); *In re Forgee Metal Products*, 229 F.2d 799, 801–02 (3d Cir. 1956); 4A Collier, BANKRUPTCY ¶ 70.43[5], at 531 (14th ed. 1975).

In the present case, the trustee apparently made no formal declaration that he intended to assume SteelShip's contract with V&S. The referee concluded that the trus-

tee neither sought nor received the assistance of V&S in negotiating the sale of assets to Dravo. This conclusion, however, does not end the inquiry.

■ Prior to the filing of its petition, SteelShip was already actively negotiating with Dravo about the possibility of a sale of assets through SteelShip's trustee. These negotiations were made possible through the efforts of V&S. Immediately following the filing of the petition Mr. Fry, SteelShip's president, informed the trustee of Dravo's interest in the property. Negotiations continued with Dravo, with Mr. Fry apparently taking an active role. Dravo made an offer to purchase SteelShip's assets. After exploring the possibility of an auction sale, the trustee decided to accept Dravo's offer.

On these facts we must conclude that the efforts of V&S were the procuring cause of the sale to Dravo. Because both the trustee and the bankruptcy court were aware of the involvement of V&S in producing Dravo as a prospective purchaser, we likewise conclude that the trustee assumed SteelShip's employment of V&S.

■ On July 22, 1976, the same day Mr. Lewey was elected trustee, V&S filed its proof of claim with the bankruptcy court asserting its right to a commission under its contract with SteelShip. The following day, Mr. Lewey petitioned the court for approval of a sale of SteelShip assets to Dravo. Apparently the only other prospect for sale of these assets was through auction which, it had been determined, would yield significantly less than Dravo's offering price.[1] It was in this state of affairs that the referee authorized the sale to Dravo on August 9, 1976. Thus, with full knowledge that V&S was claiming a contractual right to a commission, the trustee elected and the referee approved of a sale to Dravo, thereby accepting the benefits of SteelShip's agreement with V&S.[2] Having accepted the benefits of the contract, the conclusion is mandated that the liabilities were assumed as well.[3]

## IV.

■ Because he concluded that V&S was entitled to recover nothing, the referee had no occasion to separately determine the

---

1. It appears that the trustee sought the advice of an auctioneer who estimated that a sales price of $700,000 was the most that could be realized at an auction; his fee would have been 10% of the gross sales price, or approximately $70,000.

2. As noted *supra*, § 70(b) does not state any particular method by which the trustee shall assume an executory contract. That section does, however, provide a conclusive statutory presumption that a failure to assume within 60 days after the adjudication or within 30 days after qualification of the trustee (whichever is later) shall operate as a rejection. Rule 607, Rules of Bankruptcy Procedure, which is based on the language of § 70(b), provides in part as follows:

   Within 30 days after the qualification of the trustee * * * the trustee shall file a statement showing any executory contracts of the bankrupt * * * which the trustee has assumed. * * * Any such contract not assumed within 60 days after qualification of the trustee * * * shall be deemed to be rejected.

   This language modifies the provisions of § 70(b) in two ways. First, by referring exclusively to the date of the trustee's qualification, it eliminates the date of adjudication as a trig-

gering event for applying the presumption of rejection. Second, it adds a requirement that the trustee file a statement showing which of the bankrupt's contracts he has assumed.

In the instant case, Mr. Lewey was elected trustee on July 22, 1976. He petitioned the court for approval of the sale to Dravo on July 23, and approval was granted by the court on August 9. Assumption of the contract was therefore completed long before expiration of the 60-day statutory period.

Finally, Mr. Lewey did not observe the requirement of Rule 607 that he file a statement showing that he intended to assume SteelShip's contract with V&S. While we note that the preferable procedure would have been for Mr. Lewey to petition the court for either rejection or assumption, we decline to hold that Rule 607 contemplates a result whereby the trustee can knowingly assume the benefits of the bankrupt's contract and avoid exposing the estate to liability by failing to call it to the court's attention.

3. We are unpersuaded that a contrary conclusion is warranted because of the trustee's, and possibly the referee's, mistaken assumption that a sale to Dravo would not result in liability under the bankrupt's contract with V&S.

amount of the commission due. We find nothing in the record to indicate that V&S and SteelShip had reached an express agreement as to the commission payable in the event of a sale of SteelShip assets. Arkansas follows the rule that in the absence of a specific agreement the broker is entitled to recover a reasonable amount for his services. *See O'Glee v. Trigg, supra,* 271 F.Supp. at 127. Accordingly, on remand, the district court shall determine the reasonable value of the services rendered by V&S in procuring the sale. For the reasons hereinbefore set forth in paragraph III, that amount shall be paid in full to V&S from the assets of the bankrupt.

Reversed and remanded.